**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**JULIUS RICHMAN, INC. and Lenore Richman, Individually and as Executrix of the Estate of Julius Richman, Defendants.**

No. 76 C 2159.

United States District Court,
E. D. New York.

Oct. 12, 1978.

Taback & Hyams by Howard J. Herman, Jericho, N. Y., for plaintiff.

Russ, Weyl & Levitt by Jeffrey Levitt, Massapequa, N. Y., for defendants.

## OPINION

THOMAS C. PLATT, District Judge.

Plaintiff has moved this Court for an order pursuant to Rules 12 and 56 of the Federal Rules of Civil Procedure (FRCP) granting it "summary judgment for the relief demanded in its complaint and striking the 'Second Amended Verified Answer' of the defendants and each and every affirmative defense and counterclaim contained therein on the grounds that the defendants have no defense to the complaint, that said affirmative defenses fail to state defenses to the claim set forth in plaintiff's complaint, and that the counterclaims fail to state any claim upon which relief may be granted."

Defendants in turn have cross-moved for an order pursuant to FRCP 56 granting them "summary judgment for the relief requested in the answer and counterclaims, and dismissing the complaint on the grounds that defendants are entitled to judgment as a matter of law."

Plaintiff sues in this action to recover upon a promissory note and a guarantee; the note having been made by "Jules" Richman, Inc. under date of October 2, 1974, in the face amount of $291,000.00 with a discount rate of 13% for 92 days, and the guarantee having been made jointly and severally by the defendant Lenore Richman and by the late Julius Richman under date of July 13, 1973, and delivered to the Franklin National Bank ("Franklin").

The note further provided that, after maturity, interest would be payable at a rate of 3% per annum in excess of the interest or discount rate in effect at maturity and that if the note were referred to an attorney for collection there would be due and payable an attorneys' fee of 15% of all sums due on the note and all costs and expenses of any action.

Also, paragraph 14 of the guarantee provided in pertinent part that:

"Guarantor agrees that, whenever an attorney is used to obtain payment under or otherwise enforce this guarantee or to enforce, declare or adjudicate any rights or obligations under this guarantee or with respect to Collateral Security, whether by suit or by any other means whatsoever, an attorney's fee of 15% of the principal and interest then due hereunder shall be payable by each Guarantor against whom this guarantee or any obligation or right hereunder is sought to be enforced, declared or adjudicated. Guarantor, if more than one, shall be jointly and severally bound and liable hereunder. . . . ."

Plaintiff claims that no part of the principal or interest of the promissory note has been paid, although duly demanded, and that there is now due and owing to the plaintiff from the defendants the sum of $291,000 with interest at 16% per annum from January 2, 1975, together with the attorneys' fees as provided for in the note and the guarantee.

The action was originally commenced in the Suffolk County Supreme Court and was thereafter removed to this Court and certain amendments were thereafter made to the pleadings of the parties herein.

The parties have agreed that the following material facts are undisputed and for the purposes of these motions may be accepted as true:

"1. FEDERAL DEPOSIT INSURANCE CORPORATION (hereinafter called FDIC) is an agency of the United States Government organized and existing under and by virtue of an Act of Congress.

"2. On or about October 8, 1974, FRANKLIN NATIONAL BANK (hereinafter called FRANKLIN) was declared insolvent by the Comptroller of the Currency and FDIC was duly appointed Receiver thereof by the Comptroller of the Currency.

"3. FDIC, as Receiver of FRANKLIN, acting with the approval of the United States District Court for the Eastern District of New York, transferred and assigned all of the Receiver's right, title and interest in and to certain instruments, copies of which are annexed to the moving papers [of the plaintiff] as Exhibits 1 and 2, to FDIC in its corporate capacity and FDIC is the owner and holder thereof.

"4. JULIUS RICHMAN died on or about October 14, 1976, and LENORE RICHMAN was appointed Executrix of the Estate of JULIUS RICHMAN by the Surrogate's Court, Suffolk Court, New York."

Moreover, the defendants have admitted in their second amended verified answer the genuineness of the signatures of Julius and Lenore Richman on the guarantee and the defendants have since conceded the genuineness of Julius Richman's signature on the note.

Defendants have asserted that the following facts are in dispute for the purposes of these motions:

"1. That on or about October 2, 1974, defendant, JULIUS RICHMAN, INC., for value received, executed and delivered to FRANKLIN the instrument annexed to the plaintiff's moving papers as Exhibit '2' (hereinafter referred to as 'the promissory note.')

"2. That the instrument [hereinafter referred to as 'the guarantee'] executed and delivered, a copy of which is annexed as Exhibit '1' of the moving papers, was executed and delivered for any consideration, adequate consideration, or for value received, or whether the guarantee covered the obligation sued upon.

"3. That the promissory note was duly presented for payment when due but was not paid.

"4. That the amount allegedly due under the promissory note is the sum claimed of $291,000.00 with interest at 16% per annum, from January 2, 1975.

"5. That attorneys' fees are due and payable either at all or in the amount claimed.

"6. Each and every fact set forth in the affirmative defenses raised herein."

Defendants' first three affirmative defenses and first counterclaim all challenge plaintiff's claim for attorneys' fees as unreasonable particularly in light of an alleged agreement between FDIC and its attorneys regarding such fees.

Defendants' fourth and fifth affirmative defenses allege a lack of consideration for both the note and the guarantee; their sixth affirmative defense claims that the alleged obligation of the defendant Julius Richman, Inc. was not "rendered in furtherance of corporate purposes."

The seventh and eighth affirmative defenses allege a defense based upon the statute of frauds.

Finally, the ninth affirmative defense and second counterclaim allege that plaintiff has intentionally and unconstitutionally discriminated with respect to the compromise and settlement of claims and the initiation of lawsuits against persons indebted to FNB.

In making their main claim of a lack of consideration and an absence of corporate purpose in their fourth, fifth and sixth affirmative defenses, defendants in essence argue that Franklin and Julius Richman secretly agreed "to falsely carry certain 'loans' to my husband, personally, as loans to Julius Richman, Inc. . . . [and] that part of the scheme was to permit my husband to divert funds to himself, personally, without any advantage to the corporation.[1] Given this secret agreement, defend-

1. Defendants' allegations in this respect are not without factual support. Indeed, the records

annexed to the papers submitted in conjunction with this motion appear to establish that of the

ants appear to argue that there were no legitimate loans to the corporation and thus there was no consideration for the note and no corporate obligation for which defendant Lenore Richman would be liable on her guarantee.

In response to this position, plaintiff initially only disputed defendants factual allegations of a scheme and rested its case on the recitations of the documents in question.

At initial argument of the motion, however, and in subsequent briefs and argument, the defendants added a further defense of usury to liability on either the note or the guarantee. In essence, defendants argue that the loans at issue were, as noted above, in fact personal loans to Julius Richman and, as such, were made at usurious rates.

In response to this added defense, plaintiff argued for the first time that this defense, as well as that of lack of consideration, could not be asserted against the FDIC as a defense to liability under the holding of the Supreme Court in *D'Oench, Duhne & Co. v. Federal Deposit Insurance Corporation*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

In *D'Oench*, the Supreme Court held that a federal public policy protected the FDIC and the public funds which it administered in its receivership role from defendant's defense to FDIC's action on an accommodation note that the "note was given without any consideration whatever and with the understanding that no suit would be brought thereon." 315 U.S. at p. 456, 62 S.Ct. at 679. In affirming the District Court's holding that the defendant was estopped to assert these defenses by the above-stated public policy, the Court noted that (315 U.S. at 464, 62 S.Ct. 676):

"the inability of an accommodation maker to plead the defense of no consideration does not depend on his commission of a penal offense. The test is whether the note was designed to deceive the creditors

or the public authority or *would tend to have that effect*. It would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which respondent relied in insuring the bank was or was likely to be misled." (Emphasis added.)

315 U.S. at p. 460, 62 S.Ct. at p. 681. (Emphasis added.)

The FDIC would have this Court hold that *D'Oench* places the FDIC in the position of a holder in due course as to all assets assumed in its receivership capacity. However, it is clear that the holding in *D'Oench* is limited to those instances in which the maker of the note in question knowingly participates in or contributes to the misrepresentation as to the bank's assets. *See Federal Deposit Insurance Corp. v. Meo*, 505 F.2d 790, 792–93 (9th Cir. 1974); *Federal Deposit Insurance Corp. v. Miss Normee, Ltd., et al.*, 76 C 606 at p. 7 (E.D. N.Y. January 11, 1978).

Still, by defendants' own admission, it is clear that Julius Richman did "participate in and contribute to" the creation of both the note and the guarantee at issue here. Assuming the truth of defendants' claim that these documents were improperly created to secure loans which were in reality personal and usurious, this Court has no problem in holding that these documents would be enforceable according to their terms against defendant Julius Richman, Inc. and against the estate of Julius Richman under the doctrine of *D'Oench*. This conclusion flows from Julius Richman's knowing participation in the creation of arguably questionable assets which might "deceive the creditors or the public authority or would tend to have that effect." *D'Oench, Duhne & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 460, 62 S.Ct. 676, 681, 86 L.Ed. 956 (1942).

The question remains as to whether the same conclusion should apply as to defend-

---

$291,000 now claimed by plaintiff, loans aggregating $152,000 were made directly to Julius Richman on or before July 6, 1973, and there-

after loans aggregating $139,000 were made to Julius Richman, Inc.

ant Lenore Richman. In this regard, this Court assumes without deciding that Mrs. Richman was unaware of the alleged activities between her husband and the bank i. e., the funneling of personal loans to Julius Richman through Julius Richman, Inc., when she signed the guarantee at issue here.

■ The Court, however, does not think that Lenore Richman's lack of knowledge in this regard should alter the FDIC's status as holder of the guarantee. In other words, since the guarantee is an asset which, under the *D'Oench* doctrine, the FDIC holds free of defenses of lack of consideration or usury, this conclusion logically should apply as to both signers of the guarantee.

While this conclusion would appear to saddle the otherwise apparently innocent Lenore Richman with the consequences of her husband's alleged improper dealings with the Bank, and thus, in effect, saddle her with the personal debts of her deceased husband (once again assuming the truth of defendants allegations), she arguably assumed the risk of just such a result by signing the guarantee without taking the minimal precaution of assuring herself as to what was being guaranteed [2] and that the guarantee would not be abused. As against the innocent depositors and creditors of Franklin who the FDIC represents in these proceedings, charging defendant Lenore Richman with this liability under the facts of this case seems fully warranted and supported on the basis of the law and common sense.

In conclusion, defendants, under the doctrine of *D'Oench*, are estopped from asserting the defenses of lack of consideration and usury. Accordingly, the Court strikes defendants' fourth, fifth, and sixth affirmative defenses.

This Court is thus left with defendants' first three affirmative defenses and first counterclaim relating to the question of attorneys' fees, the seventh and eighth affirmative defenses based on the statute of frauds, and the ninth affirmative defense and second counterclaim alleging unconstitutional discrimination by the plaintiff.

■ As to the question of attorneys' fees, the parties would seem to agree that a hearing by the Court is necessary to determine the reasonableness of plaintiff's claim for fees, and this Court concurs in this conclusion. Such a hearing would consider not only the reasonableness of the claim made by plaintiff but also the impact on this claim of any agreements made between the FDIC and its attorneys relative to attorneys' fees.

■ As to the defenses based on the statute of frauds, the defendants appear to be arguing that plaintiff's theory of recovery assumes a corporate obligation of Julius Richman, Inc. based on its unwritten guarantee of the personal debts of Julius Richman, and that such a guarantee is unenforceable under the statute of frauds since not in writing. The defendants, however, in asserting these defenses, misconceive the thrust of plaintiff's complaint. Plaintiff has brought suit on the note and guarantee alleging a direct obligation of Julius Richman, Inc. to the bank based on loans to the company. Defendants seventh and eighth affirmative defenses, therefore, are not responsive to plaintiff's complaint, cannot defeat defendants' liability thereunder and are accordingly meritless.

Finally, as to defendants' claim of intentional and unconstitutional discrimination, plaintiff argues that it is immune, under the Federal Tort Claims Act, 28 U.S.C. § 1346(b), ["FTCA"] to what is, in essence, a tort claim against the government. Notwithstanding the FTCA, however, the cases seem clear that "a defendant may, without statutory authority, recoup on a counter-

2. In this regard, it should be noted that the bank records appear to establish that on July 6, 1973, a week before the guarantee was executed, the bank essentially loaned to Julius Richman, Inc. the money it had to that date loaned personally to Julius Richman, with which loan Mr. Richman apparently paid off his personal debt. Thus at the time the guarantee was executed, Mrs. Richman did not even determine that she was effectively guaranteeing a $152,000 loan.

claim an amount equal to the principal claim", *United States v. United States Fidelity & Guaranty Co.*, 309 U.S. 506, 511, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940), so long as the defendant asserts "matters in recoupment—arising out of the same transaction or occurrence which is the subject matter of the government's suit, and to the extent of defeating the government's claim but not to the extent of a judgment against the government which is affirmative in the sense of involving relief different in kind or nature to that sought by the government or in the sense of exceeding the amount of the government's claims; but the sovereign does not waive immunity as to claims which do not meet the 'same transaction or occurrence test' nor to claims of a different form or nature than that sought by it as plaintiff." *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967); *see, also, Bull v. United States*, 295 U.S. 247, 262, 55 S.Ct. 695, 79 L.Ed. 1421 (1935); *Federal Savings & Loan Insurance Corp. v. Quinn*, 419 F.2d 1014, 1017 (7th Cir. 1969); *United States v. Taylor*, 342 F.Supp. 715, 716 (D.Kan.1972).

In the instant case, defendants charge of intentional discrimination might arguably "arise out of the same transaction", i. e., the making of the note and guarantee and suit thereon, which is the subject of the government's claim. Accordingly, the Court does not, at this point, strike defendants' ninth affirmative defense and second counterclaim, noting, however, that such action does not reflect any predisposition on the merits of such claims. Indeed, neither party has submitted any documentation or other evidence beyond mere allegations that would either support or rebut such claims. Therefore, both parties retain the right to renew their motions for summary judgment on this claim after further discovery is completed.[3]

In summary, resolution of plaintiff's claim for attorneys' fees awaits the aforeindicated hearing. Defendants' fourth, fifth and sixth affirmative defenses are stricken.

Defendants' seventh and eighth affirmative defenses are meritless. Finally, defendants' ninth affirmative defense and second counterclaim cannot at this time be dismissed, further discovery being required for a proper resolution of these claims. Before such claims are resolved, of course, neither party is entitled to summary judgment and thus, in this respect, both motions for summary judgment are accordingly denied.

Settle Order on Notice.

---

**3.** Defendants' task of showing that their alleged matters in recoupment arise out of the same transaction or occurrence is not an easy one. *See, e. g., In re Franklin National Bank Securities Litigation*, 445 F.Supp. 723, 737–38 (E.D.N.Y.1978).