FEDERAL DEPOSIT INSURANCE COR-
PORATION, a corporation organized
and existing under the laws of the Unit-
ed States of America, Plaintiff-Appel-
lee,

v.

Marian G. LEACH and Alexander
Bartneck, (82–1003/1084),
Defendants-Appellants,

Outdoor Resorts of America, Inc., and
E. Randall Henderson, Jr., (82–1034),
Defendants-Appellants.

Nos. 82–1003, 1034 and 1084.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 7, 1983.

Decided Sept. 11, 1985.

Rehearing and Rehearing En Banc
Denied Nov. 20, 1985 in
Nos. 82–1003 and 82–1084.

Morton, District Judge, sitting by des-
ignation, filed concurring opinion.

Merritt, Circuit Judge, filed dissenting
opinion.

Larry G. Sharp, argued, Wood & Wood, Farmington Hills, Mich., for Marian G. Leach and Alexander Bartneck.

Larry E. Powe, argued, Freeman, McKenzie & Matthews, Mt. Clemens, Mich., for Federal Deposit Ins. Corp.

Richard B. Tomlinson, argued, Cross, Wrock, Miller & Vieson, Detroit, Mich., for Outdoor Resorts of America, Inc. and E. Randall Henderson, Jr.

Before ENGEL and MERRITT, Circuit Judges, and MORTON, District Judge.*

ENGEL, Circuit Judge.

This appeal involves the scope of immunity from certain state law defenses enjoyed by the Federal Deposit Insurance Corporation (FDIC) on promissory notes purchased from an insolvent state bank in the execution of a purchase and assumption transaction. Specifically, we must decide whether the FDIC, in its corporate capacity, is subject to the defenses of usury and failure of consideration, defenses which concededly the makers could have asserted against the bank had it tried to collect on the notes.

## I. Facts

In late 1973 and early 1974, Outdoor Resorts of America, Inc. (ORA) was involved in negotiations with Marian G. Leach, Alexander Bartneck and Andrew Cisaruk to purchase land in Michigan. As part of the negotiations, ORA executed a promissory note on January 30, 1974, in the amount of $50,000 to Leach, Bartneck and Cisaruk. The note was personally guaranteed by E. Randall Henderson, president of ORA. Although ORA executed the note to secure the release of the real estate, no property changed hands at the time. Leach, Bartneck and Cisaruk assigned this note to the Tri-City Bank of Warren, Michigan as collateral for a $50,000 loan. The loan was evidenced by a promissory note signed by Leach, Bartneck and Cisaruk in favor of the bank for $50,000 at 10% interest.

On April 30, 1974, following further negotiations ORA delivered a second promissory note to Leach, Bartneck and Cisaruk in another attempt to secure the release of

---

* Honorable L. Clure Morton, Chief Judge, United States District Court for the Middle District of Tennessee, sitting by designation.

the land. This second note, in the amount of $75,000 at 13% interest, was guaranteed by Henderson also. The following day, May 1, 1974, this second ORA/Henderson note was endorsed by Cisaruk and assigned to the Tri-City Bank as collateral when Leach and Bartneck executed a note for $75,000 in favor of the bank, payable in 90 days, "with interest at the rate of Thirteen (13) per cent per annum until maturity and at the rate of ___ per cent per annum after maturity." The Leach/Bartneck note was a renewal of the earlier $50,000 note executed by Leach, Bartneck and Cisaruk to the bank and covered an additional advance of $25,000. Both the original $50,000 and the subsequent $25,000 were disbursed to Prominent Realty Company, a real estate brokerage firm owned by Cisaruk. Leach and Bartneck subsequently received a portion of the bank proceeds as vendors under a land contract with ORA. Sometime in July, 1974, Leach and Bartneck made an interest payment of $2,979.10 on their personal note with the bank.

In response to Cisaruk's demand for payment on July 26, 1974, ORA issued a check, dated August 18, 1974, to Bartneck, Leach and Cisaruk in the amount of $77,979.10. Each of those persons in turn endorsed the check over to Tri-City as payment of their loan. That check was dishonored either because payment was stopped or for "insufficient funds."

The parties were never able to reach a complete agreement about the real estate sale, and no land was ever conveyed to ORA. ORA claims that it did not know that its notes had been assigned to the bank as collateral and that by the time it issued the check to Leach, Bartneck and Cisaruk, it had been told that both notes had been destroyed.

On September 27, 1974, the Tri-City Bank was closed because of insolvency. The FDIC, which insured the bank's deposits, was appointed receiver by a Michigan state court.

■ The FDIC has two methods of accomplishing its duty to pay the depositors of a failed bank. *See generally Gunter v.*

*Hutcheson,* 674 F.2d 862, 865 (11th Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *Gilman v. Federal Deposit Insurance Corp.,* 660 F.2d 688, 690 (6th Cir.1981). The simplest method is to liquidate the assets of the bank and then pay the depositors their insured amounts, covering any shortfall with insurance funds. This option suffers the disadvantages of destroying confidence in the banking system, significantly disrupting the system's intricate financial machinery, and causing depositors to wait long periods to recover even the insured portion of their funds.

The more attractive method is to employ a "purchase and assumption" transaction in which the FDIC arranges for a financially stable bank to "purchase" the failed bank and reopen it without interrupting banking operations and with no loss to depositors. To accomplish this, the transaction must be consummated with great speed, usually overnight. As soon as a receiver is appointed, the FDIC solicits bids from other banks to buy the failed bank's assets and assume its liabilities. The FDIC, as insurer, agrees to purchase any of the assets that are returned to the receiver as unacceptable by the purchasing bank. The FDIC then attempts to minimize its losses by collecting on the unacceptable assets. In these transactions, the FDIC often acts in two separate capacities: as receiver and as corporate insurer.

When the Tri-City Bank failed, the Michigan National Bank of Macomb assumed its deposit liabilities and purchased its acceptable assets as part of a purchase and assumption transaction. The FDIC, in its corporate capacity, agreed to purchase Tri-City's unacceptable assets in bulk for consideration exceeding $10 million. Among the unacceptable assets purchased by the FDIC was the $75,000 promissory note signed by Leach and Bartneck on May 1, 1974. Later the FDIC discovered the $75,000 ORA/Henderson note in Tri-City's collateral files. At that time the ORA note had been endorsed by Cisaruk only. It was

subsequently endorsed by Leach and Bart-neck.

On April 14, 1980, the FDIC sued Leach, Bartneck, ORA and Henderson, jointly and severally, in federal district court under authority of 12 U.S.C. § 1819 (1982), seeking to collect $75,000 plus interest. The district court issued a Memorandum Opinion and Order on November 24, 1981, 525 F.Supp. 1379 (E.D.Mich.) granting summary judgment for the FDIC on both notes. Leach and Bartneck filed their first notice of appeal on December 18, 1981, twelve days before judgment was entered. After the court entered judgment, Leach and Bartneck filed a second notice of appeal. ORA and Henderson appealed separately. The three appeals have been consolidated here.

## II. The Leach/Bartneck Note and the Usury Defense

Leach and Bartneck admit liability on the principal amount of their note, but argue that the FDIC is barred from collecting any interest because the note violates Michigan usury law.[1] For purposes of this appeal, we will assume that the note is usurious under Michigan law.

The FDIC argues that the usury defense is barred by the federal common law that has developed under *D'Oench, Duhme & Co. v. Federal Deposit Insurance Corp.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and its progeny. In *D'Oench*, the obligor had sold the bank bonds that were in default. To allow the bank to avoid showing the defaulted bonds on its books, the obligor executed notes to the bank with the secret understanding that the notes would never be repaid. After the FDIC acquired the notes in a purchase and assumption transaction, it sued for payment. The Supreme Court held that federal law

applied to the question of the obligor's liability on the notes. Given the strong federal policy to protect the FDIC from misrepresentations designed to influence its actions and the fact that the obligor had lent itself to a scheme to mislead the FDIC, the Court held that the obligor was estopped to deny its liability on the note.

The FDIC relies quite heavily on the district court opinion in *Federal Deposit Insurance Corp. v. Julius Richman, Inc.*, 80 F.R.D. 114 (E.D.N.Y.1978), *aff'd*, 666 F.2d 780 (2d Cir.1981), which applied the *D'Oench* rule to bar a usury defense. In *Richman*, a close corporation gave the bank a note bearing 15% interest to maturity and 16% thereafter. The note was guaranteed by the corporation's sole shareholder and his wife. The shareholder died shortly after the note was signed. When the FDIC acquired the note in a purchase and assumption, it sued for payment. The widow argued in defense that the note was usurious because the loan actually had been made to her husband personally and the interest rate on the note exceeded the maximum allowable on loans to individuals. In discussing *D'Oench*, the district court noted that the Supreme Court's holding "is limited to those instances in which the maker of the note in question knowingly participates in or contributes to the misrepresentation as to the bank's assets." 80 F.R.D. at 117. However, the court held that *D'Oench* barred the usury defense because the shareholder knowingly participated "in the creation of arguably questionable assets which might 'deceive the creditors or the public authority or would tend to have that effect.'" *Id.* (quoting *D'Oench*, 315 U.S. at 460, 62 S.Ct. at 680).

We question whether the specific rationale of *D'Oench* supports the district court's

---

**1.** Under Michigan law, the maximum lawful rate of interest on loans to natural persons is 7%, Mich.Comp.Laws Ann. § 438.31 (1978), unless the borrower furnishes "a sworn statement in writing" of a business purpose for which the loan proceeds will be used. *Id.* § 438.61. The FDIC concedes that Leach and Bartneck did not furnish a sworn statement of business purpose.

The penalty for charging usurious interest is that the lender may not recover any interest on the contract and may be obligated to pay the borrower's attorney fees and court costs. *Id.* § 438.32.

holding in *Richman* [2] or the FDIC's argument here. Although the *D'Oench* opinion provides a general basis for a federal policy to protect the FDIC, the specific holding of the case went no further than to enforce the liability of one who had "lent himself" to a scheme to defraud. However, because we find a separate basis in federal case law for upholding the FDIC's position, we need not rely on the specific rationale of *D'Oench.*

In *Federal Deposit Insurance Corp. v. Wood,* 758 F.2d 156 (6th Cir.1985), another panel of our court recently considered whether the FDIC, as holder of notes purchased in its corporate capacity from an insolvent bank, is immune from the state law defense of usury. The note in *Wood* was usurious under Michigan law. However, the court held that, as a matter of federal common law, the FDIC takes a note free of the state law usury defense when it acquires the note in its corporate capacity, as part of a purchase and assumption transaction, in good faith, for value, and without actual knowledge of any defense against the note. *Id.* at 161. The court reasoned that a rule subjecting the FDIC to the state law usury defense under these circumstances would unjustifiably give makers of notes preferential treatment over depositors and other creditors of defunct banks. In addition, the court noted that such a rule would prevent otherwise desirable purchase and assumption transactions by making the transactions more expensive than liquidations and by forcing the FDIC to examine the bank's files to determine the value of its notes in light of the defenses to them.

The material facts in the case before us are essentially the same as those in *Wood.*

Therefore, under the principle of *stare decisis,* we find that the rule announced in *Wood* governs this case. We need only determine whether the FDIC has met the requirements of the rule.

The FDIC unquestionably acquired the Leach/Bartneck note in the execution of a purchase and assumption transaction and paid value for it. However, because the parties did not raise the issue below, no evidence in the record indicates whether the FDIC had actual knowledge of the usury claim at the time of the purchase and assumption transaction. Accordingly, we vacate this portion of the district court's judgment and remand for further proceedings on this issue.[3]

### III. The ORA Note and the Failure of Consideration Defense

ORA and Henderson assert that the FDIC cannot collect on their note because the consideration for the note failed. The FDIC argues that summary judgment was proper because 12 U.S.C. § 1823(e) (1982) and the federal common law as set forth in *D'Oench* bar the failure of consideration defense. Although the district court found that section 1823(e) does not by its terms bar the failure of consideration defense as a matter of law, it held ORA liable under the doctrine of *D'Oench.*

We agree with the district court that section 1823(e) does not bar ORA's failure of consideration defense. That section provides:

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for

---

**2.** The Second Circuit affirmed the district court ruling in *Richman* on the ground that the shareholder's widow was liable as guarantor of the corporation's note. In a footnote, the court stated:

Since we conclude that Lenore Richman is liable as guarantor of the corporation's note and that her defenses are without merit, we need not accept the district court's interpretation of *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447 [62 S.Ct. 676, 86 L.Ed. 956] (1942), to

create an estoppel, an interpretation that may well have unduly extended the holding of that decision.

666 F.2d at 782.

**3.** Because we are remanding this portion of the case for further proceedings, we need not consider the argument raised by Leach and Bartneck concerning the appropriate rate of interest to be charged after the date of the note's maturity.

a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

By its terms, the statute protects the FDIC from unwritten agreements that otherwise might be asserted to diminish or defeat its rights in assets acquired from a failed bank. However, the claim asserted by ORA and Henderson is not in the nature of an agreement. Rather, they argue, in essence, that no agreement existed because (1) there was no consideration for the note to Leach, Bartneck and Cisaruk, and (2) they were not aware that the note had been assigned to the bank as collateral. Far from claiming that an oral agreement is "valid" and governs the rights of the parties, ORA and Henderson assert that their note is invalid because the consideration failed. Because this claim is directly opposite to the "shall be valid" language of section 1823(e), we agree that the failure of consideration defense is not barred by the statute.

The district court's application of the *D'Oench* doctrine is more troublesome. The court found that a memorandum agreement between ORA and Leach, Bartneck and Cisaruk specifically spelled out the fact that the original ORA note for $50,000 would be pledged to the bank as collateral. The court also found that the $75,000 ORA note was given in renewal of the earlier note under a continuation of the memorandum agreement. Therefore, the court concluded that even though ORA may not have had actual knowledge that its note would be used to secure the Leach and Bartneck renewal loan, it did possess sufficient knowledge that the note might well

be used for that purpose. Consequently, the court held that ORA, by its actions, lent itself to a scheme likely to mislead banking officials and was liable on its note under *D'Oench.*

We believe the district court's interpretation may unduly extend the holding of *D'Oench.* At we noted in Part II of this opinion, the rationale of *D'Oench* seems to be limited to situations in which the maker of the note knowingly contributes to the misrepresentation. Moreover, we have examined the record and the memorandum agreement relied upon by the district court, and we find no evidence, other than the unsubstantiated claims of the FDIC's counsel, that ORA knew that *either* of its notes would be pledged to the bank as collateral.

■ Despite these troubling aspects of the district court's opinion, we believe that the federal policy set forth in the *Wood* case supports this portion of the court's judgment. The adverse consequences of subjecting the FDIC to failure of consideration defenses to notes it acquires in a purchase and assumption agreement would be no less than the adverse consequences of subjecting the FDIC to usury defenses. Accordingly, we hold that the FDIC is also immune from the defense of failure of consideration on notes it acquires in the execution of a purchase and assumption transaction, for value, in good faith, and without actual knowledge of the failure of consideration claim at the time it enters into the purchase and assumption agreement.

■ Applying this rule to the ORA/Henderson note, we find that the failure of consideration defense is barred as a matter of law. The FDIC unquestionably obtained the note in a purchase and assumption transaction and paid value for it. Because the FDIC did not discover the note in the bank's files until after it had entered into the purchase and assumption agreement, it cannot be charged with bad faith or with actual knowledge of the failure of consideration claim at the time the agreement was signed.

ORA and Henderson argue vigorously that because they were unaware that the ORA note had been transferred to the bank, they were not at fault. Although this argument might raise an issue of fact under the estoppel rationale of *D'Oench,* which requires an element of fault on the part of the obligor, there is no fault requirement under the rule announced in *Wood.*

Finally, we note that although their failure of consideration defense is not good against the FDIC, ORA and Henderson are free to pursue whatever action they may have against Leach, Bartneck and Cisaruk.

## IV. Summary

In summary, we hold that ORA's failure of consideration claim is not barred by 12 U.S.C. § 1823(e), but is barred by a federal rule of common law protecting the FDIC from such claims when it acquires a note in execution of a purchase and assumption transaction, in good faith, for value, and without actual knowledge of the claims at the time of entering into the purchase and assumption. We hold that this federal rule also applies to the usury defense asserted by Leach and Bartneck.[4] However, because the record contains no evidence indicating whether the FDIC had actual knowledge of the usury claim when it acquired the Leach/Bartneck note, we vacate that portion of the judgment. Accordingly, the district court's grant of summary judgment is AFFIRMED in part and VACATED in part, and the cause is REMANDED for further proceedings as required by this opinion.

MORTON, District Judge, concurring.

I concur with Judge Engel's opinion but write only to express my thoughts as to what is meant by actual knowledge by the FDIC. The case is remanded to determine whether or not the FDIC had actual knowledge of the usury claim when it acquired the note in question. I think this question

was addressed in the case of *FDIC of Merchants National Bank of Mobile,* 725 F.2d 634, at 640 (11th Cir.1984), where the court stated as follows:

Sound policy reasons dictate against holding FDIC liable for its knowledge of side agreements as well as the hidden meaning of bank assets. In the ordinary course of business examiners from FDIC's open-bank division regularly visit all insured banks and even more frequently visit failing banks. If in undertaking a purchase and assumption transaction FDIC's closed-bank division were held to matters of which the open-bank examiners had actual knowledge, but beyond the scope of Sec. 1823(e), the protection of Sec. 1823(e) would be lost. Any asset would be subject to challenge based on the alleged knowledge of bank examiners. The resulting uncertainty would undercut FDIC's ability to value assets quickly and precisely when conducting a purchase and assumption transaction. *Cf. Gunter,* 674 F.2d at 865 (discussion of speed with which transactions must be consummated to prevent halt of banking services and loss of confidence in the banking industry).

Based on the above reasoning, it is my belief that for the FDIC to have actual notice which would bar its standing as a holder in due course, it would have to be notice of an established practice of the bank extending over a period of time wherein the bank charged usurious interest, and the FDIC, in its previous examinations, had notice of said practice and took no steps to correct it.

With this expression, I concur in Judge Engel's opinion.

MERRITT, Circuit Judge, dissenting.

I agree that under the doctrine of *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838, (1943), and *United States v. Kimbell Foods, Inc.,* 440

---

**4.** Our decision should not be read to mean that the FDIC is immune from all state law defenses to promissory notes. We do not foreclose the possibility that some defenses similar to those good against a holder in due course under state law may be good against the FDIC as a matter of federal law, but leave this question to the developing law.

U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), federal common law governs the question of whether the defenses of usury and failure of consideration may be asserted against the FDIC when it attempts to collect on notes it has acquired in its corporate capacity in a purchase and assumption transaction. But that does not mean that federal common law has to reject state law in the interest of what seems to me an unnecessarily bureaucratic national uniformity. The majority's federal common law rule rudely displaces state law and disrupts the ordinary expectations of consumers and businessmen based on that law, and it does not further the FDIC's administration of any statutory program or policy.

My basic problem is that I do not see any very good reason to create for the FDIC an immunity from state law defenses that its assignor, the troubled bank, does not share. To allow such an immunity for the FDIC seriously undermines the expectations of borrowers and the symmetry of the law. If there were some indication that such an immunity is needed in order to preserve the banking system, that would be a different question. The FDIC has neither made, nor attempted to make, such a showing.

The FDIC's immunity from the state law defenses of usury and failure of consideration should be determined in the following manner: under *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 460, 62 S.Ct. 676, 680, 86 L.Ed. 956 (1942), ORA and Henderson should be estopped from asserting the failure of consideration defense if they are found to have participated in a scheme or arrangement intended or likely to deceive the FDIC in insuring the bank. If not, then the defense should be available to them if it would be under Michigan law. So the question comes down to whether the bank was a holder in due course under Michigan law. Similarly, assuming that the usurious rate on the note by Leach and Bartneck was not agreed to as part of a scheme intended or likely to mislead the FDIC, the Corporation should be barred from collecting interest on the usurious note if the bank would have been barred under Michigan law.

The majority's decision rests primarily on this court's recent holding in *FDIC v. Wood*, 758 F.2d 156, 159 (6th Cir.1985), that the FDIC is immune from the defense of usury as a matter of federal common law. The court in *Wood* found that important federal policies would be frustrated if the FDIC's vulnerability to personal defenses such as usury and failure of consideration was determined by reference to state law. The first policy concern expressed in *Wood* was that since the FDIC will not qualify usually as a holder in due course because it does not acquire notes in the ordinary course of business, makers will be free to assert personal defenses to the note when the FDIC attempts to collect on it and thereby effectively have an absolute priority over other creditors of failed banks. 758 F.2d at 160. The court in *Wood* also found that 12 U.S.C. § 1823(c)(4)(A) expressed a "congressional mandate that purchase and assumption transactions be less expensive than liquidations," and found that since the presence of state law defenses would necessarily reduce the amount of collectible notes and increase the cost of a purchase and assumption transaction, the supposed "congressional mandate" required the FDIC's immunization from those defenses. 758 F.2d at 161.

The *Wood* panel's characterization of note makers who assert state law defenses as creditors of the bank is strange indeed. A note maker is indebted to the bank which holds his note and has no priority as a creditor. Assertion of a valid state law defense does not establish a claim against the bank, but relieves the maker of his liability on the note.

With regard to the second policy justifying the result in *Wood*, it is crucial to note that under 12 U.S.C. § 1823(c)(4)(A), the FDIC may choose the purchase and assumption alternative whenever the cost of purchase and assumption is lower than that amount which the "Corporation determines to be reasonably necessary to save the cost

of liquidating," or "when the Corporation determines that the continued operation of such insured bank is essential to provide adequate banking services in its community."[1] Thus, under the current statutory policy, there are circumstances in which the relative costs of purchase and assumption and liquidation need not be considered by the FDIC, and even when this comparison must be made, the Corporation need only estimate the expenses "reasonably necessary" to save the cost of liquidation. The court in *Wood* misinterpreted a statute instructing the FDIC to choose purchase and assumption only when it thinks this will be cheaper than liquidation as mandating the minimization of the actual cost of purchase and assumption by immunizing the FDIC from state law defenses. The *Wood* rule is clearly not justified by the policy underlying this statute, and its only certain effect is to redistribute the cost of bank failure from taxpayers, each of whom bears only a small fraction of the total cost, to a small number of note makers whose individual liability may be significant.

In addition, the creation of federal common law immunity for the FDIC threatens to unnecessarily disrupt "commercial relationships predicated on state law." *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 729, 99 S.Ct. 1448, 1459, 59 L.Ed.2d 711 (1979). For although note makers are well aware that the transferee may be a holder in due course, there is little question but that the *Wood* approach paves the way for the elevation of the FDIC to a status far exceeding that of an ordinary holder in due course. The *Wood* case and the court in this case would essentially do away with the actual notice limitation on holder in due course status when the FDIC is involved. And while the plaintiffs here and in *Wood*

appear to be relatively sophisticated businessmen with little need for judicial protection, many state courts have lifted holder in due course immunity when consumer loans are involved, see J. White & R. Summers, *Uniform Commercial Code* § 14–8 (2d ed. 1980), but under the approach of the majority and the *Wood* panel, the legitimate expectations of innocent consumers of the protections afforded under the traditional state authority to regulate commercial transactions will be overriden by the judicially-created powers of a federal agency.

The undesirable effects of the majority's approach can be eliminated without interfering with the FDIC's administration of its statutory mandate by understanding the interplay between federal statute, federal common law and state law. In 12 U.S.C. § 1823(e), Congress has protected the FDIC from secret agreements which would defeat rights it would otherwise have as a bank's successor. This statute was enacted well after the decisions in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and it codifies the *D'Oench* rule protecting the FDIC from secret agreements. Read in light of this statute, *D'Oench* now stands for the narrow and supplementary proposition that where an accomodation maker executes an agreement intended or likely to mislead banking authorities, he is equitably estopped from raising state law defenses that would void the agreement as between himself and the bank. 315 U.S. at 460, 62 S.Ct. at 680. This supplementary common law rule is necessary because in a bad faith transaction of the *D'Oench* sort, the bank does not acquire any rights under state law to which the FDIC could succeed. However, as a matter of federal policy, where ordinary, good faith transactions are in-

---

1. 12 U.S.C. § 1823(c)(4)(A) states:

    No assistance shall be provided under this subsection in an amount in excess of that amount which the Corporation determines to be reasonably necessary to save the cost of liquidating, including paying the insured accounts of, such insured bank, except that such restriction shall not apply in any case in which the Corporation determines that the continued operation of such insured bank is

    essential to provide adequate banking services in its community.

    As explained in the Senate Report, "the amount of FDIC assistance is limited to that necessary to save the cost of liquidation, unless the FDIC finds that the institution is essential to provide adequate banking service in its community, in which case the limit does not apply." S.Rep. No. 97–536, 97th Cong., 2d Sess., *reprinted in* 1982 U.S.Code Cong. & Ad.News 3099.

volved, the *D'Oench* estoppel rule does not apply, and "the liability of the parties to commercial paper which comes into the hands of the Corporation will be best solved by applying the local law with reference to which the makers and the insured bank presumably contracted." 315 U.S. at 474, 62 S.Ct. at 687 (Jackson, J., concurring). *See FDIC v. Meo,* 505 F.2d 790, 793 (9th Cir.1974).

Under this standard, ORA and Henderson should be allowed to defend against collection on the ground that consideration failed because the land was never released if Michigan law would have permitted them to assert that defense against the insured bank, *provided* that they are not estopped under the rule of *D'Oench.* The existence of an estoppel in turn depends on whether ORA and Henderson should have known that the note would be used as collateral by Leach and Bartneck. Henderson vigorously denies any knowledge that the note would be used as collateral, and contends that he was in fact told that the note had been destroyed. In addition, Henderson denied that the note was a renewal of an earlier note that ORA did not know would be used as collateral. In this posture, it was inappropriate for the District Court to grant summary judgment for the Corporation, and I would remand for further proceedings on this issue.

On the usurious note from Leach and Bartneck to the bank, the majority would remand for a determination of whether the FDIC had actual knowledge that the note had a usurious rate at the time of the purchase and assumption transaction. Although this result is dictated by the erroneous panel decision in *Wood,* I believe that the proper question, however, is not whether state law would have allowed the defense against a holder in due course, but whether the defense could have been asserted against the bank, since the preservation of ordinary commercial expectations is best achieved by placing the FDIC in the bank's position prior to its failure.

This question was not decided by the District Court, which held that federal common law immunized the Corporation from the usury defense. The issue under Michigan law is whether the 13 per cent interest rate on the Leach and Bartneck note is exempt from the M.C.L.A. § 438.31 maximum of 7 per cent because it is a business loan under M.C.L.A. § 438.61. That section requires that a sworn statement specifying the business purpose of the loan must be filed with the lender in order for a loan to a natural person to qualify as a business loan exempt from the statutory maximum.[2] It is undisputed that Leach and Bartneck never filed a business purpose affidavit, and I would remand to the District Court for consideration of whether Michigan law would recognize their usury defense under these circumstances.

---

**2.** In pertinent part, M.C.L.A. § 438.61 (Supp. 1984) provides that:

    (1) as used in this act "business entity" means: ...

    (b) A natural person who furnishes to the extender of credit a sworn statement in writing specifying the type of business and business purpose for which the proceeds of the loan or other extension of credit will be used, but the exemption ... does not apply if the extender of credit has notice that the person signing the sworn statement was not engaged in the business indicated.

    (2) ... it is lawful in connection with the extension of credit to a business entity ... for the parties to agree in writing to any rate of interest.