**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Plaintiff-Appellee,**

v.

**Richard M. WOOD, Defendant-Appellant.**

No. 84–1124.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 15, 1985.

Decided March 26, 1985.

Robert E. Butcher (argued), Southgate, Mich., for defendant-appellant.

Larry Powe (argued), Mount Clemens, Mich., Karen T. Mendelson, Bloomfield Hills, Mich., Margaret Egginton, Daniel W. Persinger, Lawrence F. Bates, Washington, D.C., for plaintiff-appellee.

Before LIVELY, Chief Judge and MARTIN and JONES, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

This is an action by the Federal Deposit Insurance Corporation in its corporate capacity to recover on a note that it purchased as part of a purchase and assumption agreement. The issue is whether the FDIC can recover the full amount of interest payable on the note when the jury found it to be usurious under state law. The district court, in a judgment notwithstanding the verdict, allowed the collection of interest on the ground that the ·FDIC enjoys a status equivalent to that of a holder in due course. We affirm.

The promissory note in question was signed by Peter R. Stone and Carole K. Barnett, defendants below, and guaranteed by Richard M. Wood, the defendant-appellant. The note was for the principal amount of $12,000, with interest at 15% per annum computed on a 360-day-per-annum basis, an annual percentage rate of 15.21%. It was due on September 22, 1980.

On May 15, 1982, the Community Bank of Washtenaw, which· held the note, was declared insolvent and the FDIC was appointed receiver. The FDIC in its capacity as receiver transferred certain liabilities and sold certain assets of the Community Bank to Michigan National Bank of Ann Arbor in a purchase and assumption transaction. The FDIC transferred the remaining, lower-quality assets, including this note, to itself in its corporate capacity. Purchase and assumption transactions have been described in more detail elsewhere. *See Gunter v. Hutcheson*, 674 F.2d 862, 865–66 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *FDIC v. Ashley*, 585 F.2d 157 (6th Cir.1978).

The FDIC action to collect the note was tried before a jury, which delivered a special· verdict on October 20, 1983. The jury held, inter alia, that the defendants, including Wood, were liable to the FDIC on the note, but that the underlying loan was not made for business purposes. The loan was therefore usurious under Michigan law, and no interest could be allowed. Judgment for the outstanding principal, $5,751.76, plus postjudgment interest at the statutory rate, was rendered for the FDIC. The appellant does not contest his liability for this amount on appeal.

The FDIC then moved for judgment notwithstanding the verdict for prejudgment interest, and the defendants moved for punitive costs and attorney's fees. The district court held that the FDIC enjoys a status equivalent to that of a holder in due course under state law and is immune to the defense of usury. It therefore denied the defendants' motions and granted the FDIC's motion, allowing the FDIC full contractual interest and costs.

Under Michigan law, parties in general may not agree to any rate of interest exceeding 7%. Mich.Comp.Laws Ann. § 438.-31 (1978). A usurious lender or his assign is barred from the collection of any interest, official fees, collection charge, attorney fees, or court costs, and the borrower can recover attorney fees and court costs. *Id.* § 438.32. However, banks may loan money at any rate of interest to "business entities"; a natural person is a business entity if he furnishes a sworn statement specifying the type of business and his business purpose. *Id.* § 438.61 (Supp. 1984–1985). Holders in due course are immune to the usury defense under section 438.5, which reads:

**438.5 Holder in due course, recovery**

In any action brought on any bill of exchange or promissory note payable in money, and to order or bearer, originally given or made for or upon any usurious consideration or contract, if it shall appear that the plaintiff became, in good faith the indorsee or holder of such bill or exchange or promissory note, for a valuable consideration, before the same became due, then and in such case, unless it shall further appear that the plaintiff, at the time of becoming such indorsee or holder, had actual notice that such bill or note was given for or upon a usurious consideration or contract, he shall be entitled to recover thereon, in the same manner, and to the same extent as if such usury had not been alleged and proved.

*Id.* § 438.5 (1978).

Although the words "holder in due course" appear only in the title, section 438.5 apparently represents an importation of the holder in due course doctrine from the Uniform Commercial Code. A holder in due course is a holder who takes an instrument for value, in good faith, and without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person; provided, inter alia, that the holder did not purchase the instrument as part of a bulk transaction not in the regular course of business of the transferor. Mich.Comp.Laws Ann. § 440.3302 (1967); U.C.C. § 3–302 (1972). A holder in due course takes an instrument free from all defenses of any party to the instrument with whom the holder has not dealt, except those defenses enumerated in Mich.Comp.Laws Ann. § 440.3305 (1967); U.C.C. § 3–305 (1972).

Under state law, the FDIC cannot be a holder in due course, if it had notice that the note was overdue. (The FDIC also is not a holder in due course under state law if the purchase and assumption transaction was out of its ordinary course of business as a receiver, but it appears that this rule in any case is not relevant to the usury defense under section 438.5.) We assume without holding that the FDIC in fact is not a holder in due course under state law. This case, however, is not under state law, but is under federal law pursuant to 12 U.S.C. § 1819, which reads in relevant part:

**§ 1819. Incorporation; powers; seal**

Upon June 16, 1933, the Corporation shall become a body corporate and as such shall have power—

. . . .

Fourth. To sue and to be sued, complain and defend, in any court of law or equity, State or Federal. All suits of a civil nature at common law or in equity to which the Corporation shall be party shall be deemed to arise under the laws of the United States, and the United States district courts shall have original jurisdiction thereof, without regard to the amount in controversy; and the Corporation may, without bond or security, remove any such action, suit, or proceeding from a State court to the United

States district court for the district or division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect, except that any such suit to which the Corporation is a party in its capacity as receiver of a State bank and which involves only the rights or obligations of depositors, creditors, stockholders, and such State bank under State law shall not be deemed to arise under the laws of the United States.

■ When the FDIC purchases notes in a purchase and assumption transaction, it acts in its corporate capacity. *FDIC v. Ashley*, 585 F.2d 157, 160 (6th Cir.1978). It follows that federal law applies. *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 456, 62 S.Ct. 676, 679, 86 L.Ed. 956 (1942). *Cf. United States v. Kimbell Foods*, 440 U.S. 715, 726, 99 S.Ct. 1448, 1457, 59 L.Ed.2d 711 (1979) (holding that federal law governs questions involving the rights of the United States arising under nationwide federal programs).

■ The Supreme Court held in *D'Oench, Duhme* that a secret agreement designed to deceive creditors or the public authority or tending to have that effect would not be a defense against the FDIC on its collection of a note. This holding is generally considered to have been codified in 12 U.S.C. § 1823(e), which reads:

**(e) Agreements against interests of Corporation**

No agreement which tends to diminish or defeat the right, title or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the bank and the person or persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the bank, (3) shall have been approved by the board of directors of the bank or its loan committee, which approval shall be reflected in the minutes of said board or committee,

and (4) shall have been, continuously, from the time of its execution, an official record of the bank.

There is authority that Congress intended by means of section 1823(e) to clothe the FDIC with the protections afforded a holder in due course. *FDIC v. Rosenthal*, 477 F.Supp. 1223, 1226 (E.D.Wis.1979), *aff'd mem.*, 631 F.2d 733 (7th Cir.1980); *FDIC v. Rockelman*, 460 F.Supp. 999, 1003 (E.D. Wis.1978). We believe, however, that although section 1823 manifests the congressional intent to protect the FDIC, it does not of itself authorize holder-in-due-course status. *Gunter v. Hutcheson*, 674 F.2d 862, 867 (11th Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982); *see FDIC v. Hatmaker*, 756 F.2d 34, 36 (6th Cir.1985) (holding section 1823(e) inapplicable to some frauds in the inducement). If the FDIC has that status, it must be as part of the federal common law.

As federal common law is applicable, but Congress has given no statutory guidance, we are faced with the same problem of giving content to federal law that the Supreme Court faced in *United States v. Kimbell Foods*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). The Court held that, where a national rule is unnecessary to effectuate federal interests, state law should be incorporated as the federal rule of decision. The determinative factors are whether there is need for a nationally uniform body of law, whether application of state law would frustrate specific objectives of the federal program, and whether application of a federal rule would disrupt commercial relationships predicated on state law. *Id.* at 728–29, 99 S.Ct. at 1458–59. The Court concluded that it was not necessary to adopt a federal rule protecting the priority of liens created by Small Business Administration and Farmers Home Administration loans.

We believe that, if state law mandates that the corporate FDIC cannot be a holder in due course, then application of state law would frustrate important objectives of the federal program. To understand why, we must examine the underlying policies of the law of commercial paper.

A negotiable instrument, such as a note, is a writing signed by the maker, containing an unconditional promise to pay a sum certain in money, on demand or at a definite time, to order or to bearer. Mich. Comp.Laws Ann. § 440.3104 (1967); U.C.C. § 3–104 (1972). If valid, it is enforceable on its own terms. The "real" defenses, such as incapacity, fraud in the factum, and forgery, Mich.Comp.Laws Ann. §§ 440.3305(2), 440.3401(1) (1967); U.C.C. §§ 3–305(2), 3–401(1) (1972), render the note invalid and unenforceable by anyone.

■ "Personal" defenses, such as failure of consideration and usury, are not truly defenses against the note itself, but rather are defenses or claims stemming from the underlying transaction. For simplicity, these are allowed as defenses to the note when the original wrongdoer tries to collect on it. But when the note comes into the hands of an innocent party, a holder in due course, he takes it free of all personal defenses. Mich.Comp.Laws Ann. § 440.-3305 (1967); U.C.C. § 3–305 (1972). To be innocent, however, a party must be acting in good faith. Mich.Comp.Laws Ann. § 440.1203 (1967); U.C.C. § 1–203 (1972). The holder in due course doctrine is a bright-line elaboration on the good faith requirement.

When an insured bank goes into receivership, the FDIC in most cases will in fact be a good-faith holder of its notes. If the FDIC had no knowledge, prior to receivership, of defenses to the notes, and if it otherwise acted in good faith, it cannot be said that the FDIC is not innocent. If it is true that the state's bright-line requirements prevent the FDIC from being a holder in due course, then it is inappropriate to apply those requirements to a government agency crucial to the existence of the modern banking system when they are without purpose.

■ If we considered the FDIC to be a holder other than in due course and applied state law, makers of notes would get an unjustified windfall. If the maker has a personal claim against the defunct bank, he would effectively have an absolute priority on that claim. We think a maker with a claim against the defunct bank should have to stand in line with the other unsecured creditors proceeding against the FDIC in its capacity as receiver. To rule otherwise would be to authorize special relief provisions out of the FDIC's general fund for the benefit of makers, and we believe such relief should be authorized only by Congress. Because collections by the FDIC in its corporate capacity are refunded to the FDIC as receiver, for the benefit of creditors, when collections exceed the amount the corporate FDIC paid in the purchase and assumption transaction, *FDIC v. Ashley*, 585 F.2d 157, 159, 162–63 (6th Cir. 1978), the proposed relief may be not only at the expense of depositors in general, but specifically to the detriment of other creditors of the defunct bank.

The case for giving the FDIC a protected status is made even more compelling by the nature and advantages of purchase and assumption transactions. The FDIC's purpose is "bringing to depositors sound, effective, and uninterrupted operation of the banking system with resulting safety and liquidity of bank deposits." S.Rep. No. 1269, 81st Cong., 2d Sess., *reprinted in* 1950 U.S.Code Cong. & Ad.News 3765, 3765–66; *accord Gunter v. Hutcheson*, 674 F.2d 862, 870 (11th Cir.) (describing FDIC's policies as promoting the stability of and confidence in the nation's banking system), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). When an insured bank fails, the use of a purchase and assumption transaction is a dramatically effective way for the FDIC to fulfill its purpose.

The most striking advantage of a purchase and assumption transaction over the alternative, liquidating the bank's assets and paying the depositors their insurance, is its speed. The transaction usually is arranged overnight, so that banking services are not interrupted for a single business day. In contrast, a liquidation may take months—hardly an example of "uninterrupted operation of the banking system" and "liquidity of bank deposits."

Almost as important are the financial advantages. Depositors receive the full amounts of their deposits, rather than only

the insured amounts. *Gunter v. Hutcheson*, 674 F.2d at 870 n. 10; *FDIC v. Ashley*, 585 F.2d 157, 163 (6th Cir.1978). Nevertheless, purchase and assumption transactions are generally less costly to the FDIC than liquidations. In fact, Congress requires that purchase and assumption transactions be made only upon a determination that the cost would be less than that of liquidation, except in the extraordinary case when continued operation of the insured bank is essential to provide adequate banking services in its community. 12 U.S.C. § 1823(c)(4)(A). *See also FDIC v. Merchants National Bank*, 725 F.2d 634, 637–38 (11th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984).

But the essence of a purchase and assumption transaction is speed. If the FDIC is forced to examine the bank's files to determine the value of its notes in light of the defenses to them, the transaction will not take place. If the FDIC takes a liberal view of its statutory duty and quickly estimates the notes' value based on past experience, there may be many unknown claims to which it will nevertheless be vulnerable. Because some failing banks will have been reasonably scrupulous in obtaining their notes, while others will have many notes with personal defenses, past experience would in many cases be a poor guide to the notes' value. This uncertainty would be aggravated by state variations in the allowance of defenses. *Accord FDIC v. Gulf Life Insurance Co.*, 737 F.2d 1513, 1517 (11th Cir.1984); *Gunter v. Hutcheson*, 674 F.2d at 870; *Gilman v. FDIC*, 660 F.2d 688, 695 (6th Cir.1981).

In addition, the congressional mandate that purchase and assumption transactions be less expensive than liquidations, except in extraordinary cases, means that the presence of state-law defenses would in many cases prevent the transaction. The amount the FDIC could not collect from makers with personal defenses would make the transaction that much more expensive. In other words, we are asked not merely to give makers preferential treatment over other creditors and depositors, but we are asked to do so at potentially enormous cost to the banking system as a whole. We

think these adverse consequences to allowing makers to assert personal defenses against the corporate FDIC make such a rule unacceptable.

The only remaining consideration is whether treating the FDIC as a holder in due course would disrupt commercial relationships predicated on state law. A negotiable instrument is subject to transfer at any time, and the maker must always be aware that the transferee may be a holder in due course. From the maker's view, there is no difference between his bank failing and the note going to the corporate FDIC, and his bank failing after selling the note to a holder in due course. *See Gunter v. Hutcheson*, 674 F.2d at 872.

■ For these reasons, we hold that when the FDIC in its corporate capacity, as part of a purchase and assumption transaction, acquires a note in good faith, for value, and without actual knowledge of any defense against the note, it takes the note free of all defenses that would not prevail against a holder in due course. This rule was implicit in this Circuit's holding in *Gilman v. FDIC*, 660 F.2d 688, 695 (6th Cir. 1981), and in the Eleventh Circuit's holding in *Gunter v. Hutcheson*, 674 F.2d at 873; it was held in dictum in *FDIC v. Hatmaker*, 756 F.2d 34, 38 n. 5 (6th Cir.1985). We express no opinion whether we would give the FDIC preferential treatment in other contexts. *Cf. FDIC v. Gulf Life Insurance Co.*, 737 F.2d 1513 (11th Cir.1984) (allowing FDIC to collect unearned premium refunds from life insurance company, notwithstanding defenses of waiver, estoppel, and unjust enrichment).

The defendant argues, however, that the FDIC must be charged with knowledge that the note was usurious. Under the statute, a loan made by a bank to an individual at an interest rate of more than 7% is usurious unless there is a sworn statement specifying the type of business and the business purpose. Mich.Comp.Laws Ann. § 438.61 (Supp.1984–1985). He argues that the interest rate of 15.21% and the lack of a statement in the bank's files should have warned the FDIC of the usury defense.

■ That argument ignores our explicit holding in *Gilman* that the FDIC is under no duty, in either of its capacities, to examine the assets of a failed bank before it agrees to execute a purchase and assumption transaction. 660 F.2d at 694. The FDIC cannot, therefore, be charged with knowledge of a defense merely because that information could be found in the bank's files. Furthermore, actual knowledge must be shown as of the date the FDIC entered into the purchase and assumption agreement. *Id.* at 695. *Cf. FDIC v. Merchants National Bank,* 725 F.2d 634, 640 (11th Cir.) (similar holding under 12 U.S.C. § 1823(e)), *cert. denied,* — U.S. ——, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984).

■ In this case, defendant's assertion that the FDIC had knowledge of the defense was based only on the fact that an examination of the bank records should have put the FDIC on notice. That allegation is not sufficient to overcome the presumption that the FDIC had no knowledge of any defenses against it.

The case is affirmed.