**James C. KILE, et ux,**

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity.**

**No. CIV-1-85-614.**

United States District Court, E.D. Tennessee, S.D.

Aug. 20, 1986.

George Buxton, Robert W. Wilkinson, Oak Ridge, Tenn., for Kile.

Boyd W. Venable, III, Rex R. Veal, Knoxville, Tenn., for F.D.I.C.

## MEMORANDUM AND ORDER

HULL, Chief Judge.

This action for a declaratory judgment came on for trial on July 31, 1986. Based upon the facts stipulated, the testimony received, and the briefs and arguments of counsel, the Court makes the following findings of fact and conclusions of law:

Most of the pertinent facts in this case are contained in the stipulation of fact filed by the parties. This stipulation is hereby incorporated by reference and adopted by the Court as part of its findings of fact. However, for purposes of clarity in this decision, the factual situation will be set forth briefly below.

This case involves a determination of lien priority between the Kiles and the FDIC as relates to a certain parcel of real property. Both the Kiles and the FDIC hold valid promissory notes secured by valid deeds of trust covering the subject property. The Kiles' deed of trust is prior-made but later-recorded than the deed of trust under which the FDIC is claiming. Both promissory notes are in default, and this action was instituted by the Kiles to determine who is entitled to first priority in the proceeds to be generated by foreclosure. The Kiles claim that although their deed of trust was unrecorded, the FDIC had actual knowledge of it prior to taking the deed of trust under which they claim; and, that under state law their lien should be accorded priority. Tennessee's statute regarding priority of registered instruments provides that the first to record has priority unless it is proved that the party claiming under the subsequently-made, but prior-recorded instrument "had full knowledge of the previous instrument." T.C.A. § 66–25–105. In addition, T.C.A. § 66–25–103 provides subsequent bona-fide purchasers, a term construed as including mortgagees, *Savings, Building & Loan Assoc. v. McLain,* 18 Tenn.App. 292, 76 S.W.2d 650 (1934), with priority over prior unrecorded instruments of which the bona-fide purchaser had no notice.

The FDIC asserts four defenses to the Kiles' theory which will be discussed below, but basically asks the Court to find, under current federal common law, that the FDIC did not have notice of the Kiles' prior lien; or, to create new federal common law in the area of registration/priority of liens. For the reasons that follow, the Court rejects the arguments of the FDIC and finds the Kiles entitled to first priority in the proceeds from the sale of the property.

The property at issue was one tract of a large parcel of real estate owned by the Kiles. The Kiles originally sold the property in 1977 at an auction, conducted by Furrow Auction Company of Knoxville, to a partnership consisting of A.M. Beeman, Jr., Lee A. Beeman, and T.J.T. Hayes, III. These men were not personally known by

the Kiles, but, as one of the terms of the auction sale the Kiles had agreed to provide owner financing to the successful bidder. Thus, the Kiles took a promissory note secured by a deed of trust on the property from the partnership. By some act of ineptitude, or for some reason unknown to the parties in this action, the Kiles' deed of trust was not recorded at that time.

Three years later, the partnership pledged the real estate as part of the collateral for a loan from the City & County Bank of Monroe County, Tennessee (Bank). A promissory note and deed of trust was executed in favor of the Bank. This deed of trust was duly recorded September 9, 1980. The loan was made and approved by David Craig, President and Chief Executive Officer of the Bank, and Richard Childs, member of the Executive Loan Committee, pursuant to a policy of the' Board of Directors. According to the testimony of David Craig, the prior lien of the Kiles was disclosed to the Bank at the time of the loan application, however, the title opinion which was sent to David Craig by an attorney indicated that the Bank would have a first lien on the partnership property. The title opinion obviously resulted from the Kile deed of trust being unrecorded, and is of little moment, since it is not disputed at this point that the Bank had notice of the Kiles' prior lien and, therefore, took their lien subject to the Kiles' deed of trust. In 1982 the partnership sold the property to Jake Butcher who assumed both promissory notes and deeds of trust. The assumption of the Kile note and unrecorded deed of trust, as well as the Bank note and deed of trust, was recited as part of the consideration for the transfer of the realty in the warranty deed to Butcher.

Mr. Butcher subsequently became insolvent, as did the Bank. In Butcher's bankruptcy proceedings the Bank filed a motion seeking abandonment of the property by the trustee, which indicated that the Kiles held a first deed of trust on the property; and, that the Bank held a second. The property was abandoned by the trustee in bankruptcy, leaving the Bank and the Kiles looking to the property for satisfaction of their notes. During the pendency of the bankruptcy proceedings the Bank made at least one payment to the Kiles on the note assumed by Butcher, noting in the letter which accompanied the payment that the Bank was "awaiting appropriate action [by the bankruptcy court] to foreclose on the second mortgage securing repayment."

The FDIC examination reports relating to the Bank's loan, and dated January 1983 and February 1984, specifically noted that the Bank's mortgage on the property was a second lien. No classification was given in 1983, but in 1984 the loan was "classified substandard due to lack of performance and lack of sufficient collateral."

In April, 1984 the FDIC was appointed receiver of the Bank; and, as part of a purchase and assumption transaction, sold the promissory note and deed of trust held by the Bank and previously assumed by Butcher, to the FDIC in its corporate capacity.

The FDIC, in its corporate capacity, now asserts that it is entitled to first lien status on the same note and deed of trust which it previously evaluated "substandard," in part, because of the Bank's second lien status.

There can be no doubt that the FDIC has been accorded, and is entitled to, preferential treatment by the courts in the recovery of assets thrust upon it in connection with the facilitation of purchase and assumption transactions within our national banking system. This preferential treatment, found in the emerging federal common law as well as Congressional enactment, is soundly based upon strong public policy considerations. The FDIC seeks to rely upon these considerations in the instant case, but the Court finds that they have not been implicated in this action.

In its first defense, the FDIC, relying on 12 U.S.C. § 1823(e), asserts that this situation actually amounts to a side agreement between the Kiles and the Bank to subordinate the Bank's lien on the subject property, which agreement is invalid under

§ 1823(e) because it fails to comply with the four requirements of the statute.[1] This argument must fail principally because the Bank did not become subordinate by any agreement, but by operation of state law. Because the Bank had knowledge of the Kiles' deed of trust prior to taking its own, it had no choice but to assume second lien status under T.C.A. § 66–25–103 and/or 105. In addition, there is absolutely no evidence in the record to support the inference that Dr. Kile made any sort of "agreement" with the Bank.

Similarly, the FDIC asserts that the Kiles should not be accorded priority because by not recording their deed of trust they allowed the partnership that originally purchased the property to deceive Bank regulators by appearing to have an unencumbered parcel of realty pledged as security for a loan. This theory apparently finds its genesis in *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), and is discussed in *FDIC v. Hatmaker*, 756 F.2d 34 (6th Cir.1985).

*Hatmaker* involved a situation where the maker of a note, the proceeds of which were used to purchase stock in the Bank, signed the note in blank with the assurance of his brother and a bank vice-president that the amount of $12,000.00 would be filled in later. When the bank failed and the FDIC sought to enforce the note, Hatmaker found himself liable for $60,207.00 instead of $12,000.00. Hatmaker's alleged agreement with the bank as to the amount of the note was struck down under § 1823(e) without reaching the *D'Oench, Duhme* rationale. However, Hatmaker had also asserted failure of consideration as a defense. This issue had been submitted to the jury at trial with the instruction that if "Hatmaker lent himself to a

deceptive scheme or arrangement involving the circumstances giving rise to his defense, ... he was estopped under the *D'Oench, Duhme* holding from asserting failure of consideration as a defense." *Hatmaker* at 38. The Court of Appeals found ample evidence to support the jury verdict against Hatmaker on this issue under the *D'Oench, Duhme* rationale.

In *D'Oench, Duhme* a securities broker sold some bonds to a bank. The broker then executed a note to the bank to enable the bank to carry the notes as assets, and not show any past-due bonds. As the bonds were paid off the note was to be credited with those amounts, and the written understanding of the parties was that the note would not be called for payment, and that all interest would be repaid by the bank. The conflict arose when the FDIC acquired the note as collateral for a loan to the bank, and sought to enforce it according to the terms on its face. In holding that the maker of the note was not entitled to plead the defense of no consideration, the Supreme Court stated that "it would be sufficient in this type of case that the maker lent himself to a scheme or arrangement whereby the banking authority on which [the FDIC] relied in insuring the bank was or was likely to be misled." *Id,* 315 U.S. at 460, 62 S.Ct. at 681.

In the present case, Dr. Kile testified that he really didn't know whether or not his deed of trust had been recorded at the time of the sale to the partnership; and that he had no idea that there was a second mortgage on the property until a Bank representative phoned him during the pendency of the Butcher bankruptcy proceedings. The plaintiffs herein certainly did not deliberately "lend" themselves to the

---

**1.** 12 U.S.C. § 1823(e) provides that:
"(e) Agreements against interests of Corporation
No agreement which tends to diminish or defeat the right, title, or interest of the Corporation in any asset acquired by it under this section, either as security for a loan or by purchase, shall be valid against the Corporation unless such agreement (1) shall be in writing, (2) shall have been executed by the Bank and the person or

persons claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the Bank, (3) shall have been approved by the board of directors of the Bank or its loan committee, which approval shall be reflected in the minutes of said board or committee, and (4) shall have been, continuously, from the time of its execution, an official record of the Bank."

perpetration of a fraud upon Bank regulators. In the absence of some evidence of intent, the Court finds that the failure to record a deed of trust is not the type of action which should be penalized under *D'Oench, Duhme*. Moreover, there simply was no deception of Bank regulators in this case. Although the FDIC's 1981 examination report did not indicate that the Bank's lien was second, it is clear from the 1983 and 1984 reports that the FDIC knew the Bank's position with respect to this property.

The Bank was not deceiving anyone in regard to the quality of the collateral securing its note. The Bank's file clearly reveals the fact that it held a junior lien on the property which was subject to the senior lien of the Kiles. The FDIC had independent knowledge of this fact through their 1983 and 1984 examination reports. Yet, the FDIC contends that under the federal common law rule in cases such as *FDIC v. Wood*, 758 F.2d 156 (6th Cir.1985), they should not be charged with notice of the Kiles' prior deed. In the *Wood* case, the Sixth Circuit elevated the FDIC to the status of a holder in due course of the assets it purchases in facilitating a purchase and assumption transaction, so long as it acquired the assets "in good faith, for value, and without actual knowledge of any defense against [them]...." *Id.* at 161.

*Wood* involved the typical situation of the FDIC bringing suit against the maker of a note purchased by the FDIC in its corporate capacity from the receiver of a failed Bank. The maker, Wood, asserted that he was not liable for interest on the loan under Michigan law because it was usurious. Under Michigan's usury law, interest on a loan could not exceed 7% unless the loan was made to a business entity. An individual would qualify as a business entity if he furnished the bank a sworn statement which stated the type of business engaged in, and his business purpose. Wood was an individual. His interest rate was 15.21%; and there was no sworn statement indicating his qualification as a business entity in the bank's files. Wood, therefore, argued that the FDIC should be

charged with knowledge that the note was usurious because an examination of the loan file should have put the FDIC on notice of the defense. In ruling that the FDIC was to be accorded the status of a holder in due course in that situation, the Court reaffirmed its holding in *Gilman v. FDIC*, 660 F.2d 688 (6th Cir.1981) that actual knowledge of a defense against a note "must be shown as of the date the FDIC entered into the purchase and assumption agreement," *Wood* at 162, and that the FDIC is under no duty to examine the assets of a failed bank before executing a purchase and assumption agreement.

Although this line of cases provides some useful rules and a great deal of guidance for the Court in this situation, the cases involving suits to collect on notes, and the raising of various defenses by makers and guarantors, are inapposite to the case at bar. The FDIC in this case is not seeking to collect on a note from a presumably liable debtor, but rather is seeking to be accorded priority to a parcel of realty which was pledged as security for a note. In *Wood* the Sixth Circuit stated that they "expressed no opinion whether [they] would give the FDIC preferential treatment in other contexts." *Id.* at 161. *See also, Gunter v. Hutcheson*, 674 F.2d 862, 872-3 (6th Cir.1982). Thus, the Court is apparently faced with a case of first impression for which the Court of Appeals has not made a definitive ruling.

The FDIC contends that even if factually inapposite, the holdings in cases such as *Wood* should provide a dispositive rule in the present case. It is true that resolution of the priority of deeds of trust in the situation presented herein is similar to the disposition of certain defenses against a holder in due course in that under Tennessee law, as stated previously, the holder of a later-made but prior-recorded deed of trust takes priority over the prior-made but later-recorded deed *of which he has no knowledge*.

FDIC asserts that it took the prior-recorded deed of trust of the Bank without

knowledge of the prior-made deed of trust of the Kiles because: (1) the FDIC is not to be imputed with knowledge of defenses which may be ascertained by an examination of the Bank's files, *Gilman* and *Wood, supra;* and (2) the FDIC is not to be imputed with knowledge of defenses which may have been discovered by an examiner working out of the open-bank division. *FDIC v. Merchants National Bank of Mobile,* 725 F.2d 634 (11th Cir.1984).

As to the first reason, that the FDIC is not charged with notice of defenses that may be ascertained by a records examination, it seems as if the Courts of Appeals have given it to the FDIC both ways. In the § 1823(e) side agreement cases the courts assert the need of the FDIC to rely upon the bank records in assessing asset value, which is an integral step in the decision of whether to undertake a purchase and assumption transaction. *See, FDIC v. Merchants National Bank of Mobile,* 725 F.2d 634 (11th Cir.1984), *cert. denied,* 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984). On the other hand, when a defense is asserted which cannot be struck down under § 1823(e), and which may have been ascertained by a close examination of the loan file, the courts emphasize the inability of the FDIC to examine the bank records because of the speed with which the decision of whether to undertake a purchase and assumption transaction must be made. *See, Gilman v. FDIC,* 660 F.2d 688 (6th Cir.1981).

In this case, although § 1823(e) is inapplicable as discussed above, the Court notes that the justification asserted for the statute has been clearly satisfied since the documentation in the Bank's records discloses the first lien of the Kiles and the subordinated position of the Bank with respect to the property at issue.

As to the decisions striking down defenses which may have been ascertained from a review of the records, the Court notes this critical distinction: those decisions involve notes which are presumably valid but to which a defense may be found by one learned in the law under close scrutiny of the loan file. *E.g., Gilman, supra,* (asserted that loan was void because made for purchase of stock which contravened the margin requirements of the Securities Exchange Act); *Wood, supra,* (asserted that liability for interest on loan extinguished since loan was usurious under state law). The case at bar does not involve a defense asserted against a note which would have to be dredged out of the Bank records by implication. There is, quite simply, a clear indication in the Bank's file on this loan that it possessed an inferior position with respect to this item of collateral. The Court believes that because this case does not involve a defense to a note, because the "defense", if one may refer to it as such, is clearly recognized in the official Bank records, and because the "defense" could be validly asserted against the FDIC's predecessor, the FDIC should not prevail under the holdings of *Wood* and *Gilman.* The Court acknowledges, however, that on those facts alone, the Court of Appeals would likely rule in favor of the FDIC; [2] but in the present case, we have the further fact that in 1983 and 1984 the FDIC's official reports on the Bank specifically indicate the existence and priority of the Kile deed. Thus, even if the FDIC is not bound by what forthrightly appears in the Bank's records, they may still be said to have had actual knowledge of the Kiles' priority inasmuch as their own records document this fact. This brings us to the FDIC's second argument against a finding that it had knowledge of the Kile deed, that the agency is not to be imputed with knowledge of defenses which may have been discovered by an examiner working out of the open-bank division.

2. On those facts alone this Court might also well rule in favor of the FDIC—not on the authority of *Wood* and *Gilman,* which appear to be distinguishable, but because the FDIC is under no duty to examine the assets before a purchase and assumption transaction, and therefore, probably would not have had "full knowledge" of the Kile deed as required for subordination under Tennessee law.

The Court acknowledges and agrees with the ruling in *FDIC v. Merchant's National Bank of Mobile, supra,* upon which the FDIC seeks to rely in this case, but the Court cannot agree with the extension of that rule implicitly sought by the FDIC. In *Merchants,* the Eleventh Circuit stated that, "[i]n the ordinary course of business examiners from FDIC's open-bank division regularly visit all insured banks and even more frequently visit failing banks. If in undertaking a purchase and assumption transaction FDIC's closed-bank division were held to matters of which the open-bank examiners had actual knowledge, but beyond the scope of Sec. 1823(e), the protection of Sec. 1823(e) would be lost." *Id.* at 640. As the quoted portion indicates, the ruling in *Merchants* was made in the context of a § 1823(e) decision, and the Court basically said that notice is irrelevant if the requirements of the statute are not met. In this case, § 1823(e) has no application, and notice is relevant under the state priority statute or under the federal common law urged by defendant.

Moreover, in this case we are not talking about a matter simply within the knowledge of an FDIC examiner. First of all, the matter at issue here clearly appears within the Bank's files. In *Merchants,* the matter at issue, the meaning of an ambiguous term, did not appear in the bank's files. In addition, knowledge of the matter at issue in this case was not simply within the mind of the examiner, it was clearly communicated to the agency through the 1983 and 1984 examination reports which undoubtedly played a role in the decisions made regarding the Bank's solvency and salvageability.

The FDIC seeks to enlarge the scope of the doctrine just discussed by delineating not only between the agent and the agency, but also between the open-bank and closed-bank divisions within the agency. The Court declines the opportunity to embark upon such an extension.

The FDIC contends that its closed-bank division should not be held to the knowledge of its open-bank division as found in the examination reports. The Court cannot partake of this fiction, on the basis of which the FDIC could conceivably be placed in the position of never having "knowledge" of anything. The open-bank and closed-bank divisions certainly work closely, particularly in regard to banks near insolvency or recently closed. These divisions do not appear to be susceptible to the clear distinction found between the FDIC acting as receiver of a failed bank, and the FDIC acting in its corporate capacity.

Accordingly, the Court finds that, based upon the examination reports contained in the FDIC's own records, the FDIC had full knowledge of the Kile deed of trust prior to acquiring the Bank's subordinate deed of trust. Thus, under the priority statute in Tennessee, the FDIC's position, in relation to the property at issue, is subordinate to that of the Kiles.

Since the Court finds that the FDIC had actual notice of the prior deed in this case, this decision may simply be viewed as an application of the holding in *Wood.* However, since the state law governing priority of recorded instruments basically mirrors the federal common law requirements placed upon the FDIC to accord it holder in due course status when dealing with defenses to notes, there would appear to be no need to apply federal common law, or to even consider whether a different federal common law rule should be fashioned in the field of deed priority.

Finally, the FDIC argued that the Kiles' mortgage could not be given priority over the mortgage held by the FDIC because the Kiles had not paid the privilege tax required under T.C.A. § 67–4–409(b) at the time the Bank's deed of trust was recorded and its privilege tax paid. This privilege tax is only required to be paid upon the recording of an instrument evidencing an indebtedness. The priority of instruments statutes obviously contemplate the situation of allowing priority to an unrecorded instrument upon which no privilege tax had been paid. Thus, the Court finds no merit

in this final argument advanced by the FDIC.

In conclusion, the finding of the Court critical to its decision is that the FDIC had knowledge that it was acquiring an inferior deed of trust at the time it purchased the note and accompanying security. Applying this finding to Tennessee's priority law places the FDIC in the subordinated position of the Bank from which it obtained the asset; and, applying this finding by analogy to the federal common law rule of *Wood* subjects the FDIC to the known "defense" of the prior-made deed of trust. If the FDIC is ever to be found to have "knowledge" of a matter, surely it must be upon these facts.

We have here, a situation in which the FDIC, spurred on by the "super-preferences" accorded it by the judicial system, has sought to overstep the protections intended it by Congress and necessary for the effectuation of sound public policy. The FDIC is not in need of protection in this case, the public is. The FDIC is over-reaching, attempting to obtain more than its predecessor in interest ever had through the meticulous construction of recently developed judicial doctrine. This attack by the FDIC is unpalatable because, prior to purchasing the note and deed of trust, it well knew the value and limitations of the asset which it now seeks to inflate to the detriment of innocent parties—the Kiles. The Bank was not duped, the FDIC was not misled, and the only policy reason that might be advocated in favor of the FDIC's position is that allowing the FDIC priority would advance the soundness of the insurance fund and inure to the benefit of the Bank's creditors and depositors. If that were enough, the FDIC may as well be told that it can do what it pleases; it will always win.

If the FDIC did not have notice in this case, the courts of appeal should clearly articulate a common law rule that no defenses may be asserted against any assets taken by the FDIC in its corporate capacity from a failed bank because there are no circumstances in which the FDIC is capable of "knowing" anything.

For the foregoing reasons it is hereby DECLARED that the Kiles' lien is entitled to first priority in the proceeds from the foreclosure sale of the mortgaged property. The FDIC is entitled to any excess after satisfaction of the Kiles' lien.

It is so ORDERED.