**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff,**

v.

**VIDEO EXPO, INC., et al., Defendants.**

**No. Civ. 3–84–869.**

United States District Court,
E.D. Tennessee, N.D.

Aug. 7, 1987.

Patricia K. Horton, Rex R. Veal, Knoxville, Tenn., for F.D.I.C.

Brent R. Watson, Knoxville, Tenn., for David Kail, Anna May Kail and Robert Kail.

Jack B. Draper, Knoxville, Tenn., and Eckert, Seamans, Cherin & Mellott, Pittsburgh, Pa., for Robert J. Gallagher.

## MEMORANDUM

JARVIS, District Judge.

The FDIC has filed a motion requesting that this court reconsider its order entered on May 12, 1987 denying the FDIC's motions for summary judgment [Court File # 149]. The FDIC contends that as a matter of federal common law it is entitled to all of the protections afforded a holder in due course.

With respect to the protections afforded the FDIC when it holds an asset obtained from a failed bank, the United States Court of Appeals for the Sixth Circuit has held as follows:

> For these reasons, we hold that when the FDIC in its corporate capacity, as part of

a purchase and assumption transaction, acquires a note in good faith, for value, and without actual knowledge of any defense against the note, it takes the note free of all defenses that would not prevail against a holder in due course.

*Federal Deposit Insurance Corporation v. Wood,* 758 F.2d 156, 161 (6th Cir.1985).

The promissory note in question in this case was executed on March 10, 1982 by Video Expo, Inc. in the principal amount of $475,000.00. The individual defendants each executed continuing guaranties securing payment of the note to United American Bank in Knoxville ("UAB"). The FDIC contends that it acquired the promissory note and guaranties "as part of a purchase and assumption transaction". The court disagrees.

The purchase and assumption transaction entered into upon the failure of UAB was unique.[1] With respect to the purchase and assumption agreement entered into in the case of UAB, First Tennessee Bank ("FTB"), the assuming bank, agreed to and acquired all of the book assets of UAB rather than simply the "good" assets. *See* Purchase and Assumption Agreement, § 3.1. To protect the assuming bank, the purchase and assumption agreement contained the following paragraph with respect to the provision of "loss assistance" by the FDIC:

> 3.2 *FDIC Assistance.* FDIC will reimburse assuming bank for any loss sustained by assuming bank in excess of $86.5 million. Any claim for FDIC assistance hereunder must be made in writing prior to the expiration of two years from the Bank Closing.

Nothing in the original purchase and assumption agreement, entered into on February 15, 1983, required the FDIC to later repurchase any of the assets originally transferred to FTB.

On August 8, 1984, the FDIC and FTB entered into an agreement whereby the FDIC purchased the remaining UAB assets in the hands of FTB. These assets consisted of two groups: (1) those on which the FDIC had already paid loss assistance;[2] and (2) those on which loss assistance had not yet been paid. The assets in this case fall into the latter category.

■ The court is aware that Congress has given the FDIC broad discretion to structure the form of a particular purchase and assumption transaction. *See* 12 U.S.C. § 1823(c)(2)(A). The Corporation is authorized "in its sole discretion and upon such terms and conditions as the Board of Directors may describe to purchase any assets of the failed bank to facilitate the assumption of the failed bank's liabilities by the assuming bank." This authority gives the FDIC tools by which it can respond quickly and with great flexibility in the event of a bank failure. However, I see nothing in the language of § 1823(c) which authorizes the FDIC to alter the form of the purchase and assumption transaction one and a half years after the bank failure. With respect to the obligations on which no loss assistance had been paid, it cannot be said that these assets were purchased in August, 1984 to facilitate the sale of UAB's assets or the assumption of its liabilities by FTB. *See* 12 U.S.C. § 1823(c)(2)(A). That sale and assumption had taken place sixteen months earlier. Nor can it be said that the FDIC had a duty to purchase those assets pursuant to the purchase and assumption agreement, although FDIC may have been required to pay loss assistance on some of the assets if claims were presented before February 15, 1985.

■ The court concludes that the promissory note and guaranties which are the

---

1. The procedures and purposes behind an ordinary purchase and assumption transaction are set out in *Gunter v. Hutcheson,* 674 F.2d 862 (11th Cir.1982), and will not be repeated herein.

2. This court has previously held in *Super X Drugs Company v. Federal Deposit Insurance Corporation,* Civ. 3–86–908 (Memorandum entered May 18, 1987), that assets on which the

FDIC had already paid loss assistance as of August 8, 1984 were acquired as part of a purchase and assumption transaction. *See Super X,* at p. 8. This Court expressed no opinion at that time as to whether the assets purchased in August, 1984 on which loss assistance had not been paid were transferred pursuant to the authority of 12 U.S.C. § 1823(c)(2)(A).

subject of this lawsuit were not purchased pursuant to the purchase and assumption transaction entered into upon the failure of UAB. Therefore, the holding of the Sixth Circuit in *Wood,* 758 F.2d 156, and other cases regarding assets obtained by the FDIC pursuant to purchase and assumption transactions is not applicable in the instant case.

In light of the foregoing, the FDIC's motion requesting reconsideration of the order entered by this court on May 12, 1987 [Court File # 150] is DENIED.

Order accordingly.