**James S. NICHOLAS and Georgia Nicholas, Husband and Wife; Christos T. Panopoulos and Joan Panopoulos, Husband and Wife, Plaintiffs,**

**v.**

**UNITED STATES of America, Federal Deposit Insurance Corporation; Clara Bell Seaberg; Richard George Seaberg; and Bluff Development Corporation, a Michigan corporation, Defendants.**

**No. 1:89 CV 561.**

United States District Court,
W.D. Mich., S.D.

March 13, 1991.

Paul L. Nelson, Tolley, Fisher & Verwys, PC, Grand Rapids, Mich., for plaintiffs.

Larry E. Powe, Jeffrey L. Portis, Freeman & McKenzie, Mount Clemens, Mich., for defendants U.S. and F.D.I.C.

Donald A. Brandt, Smith, Johnson, Brandt & Heintz, PC, Traverse City, Mich., for defendant Bluff Development Corp.

Brett N. Rodgers, U.S. Bankruptcy Court, W.D., Grand Rapids, Mich., trustee.

## OPINION

ENSLEN, District Judge.

This quiet title action comes before the Court on cross motions for summary judgment. One of the defendants, Federal Deposit Insurance Corporation (FDIC), filed a motion for summary judgment on June 25, 1990. Plaintiffs responded by filing a motion for summary judgment on September 17, 1990. Plaintiffs' complaint, filed June 20, 1990, seeks a declaratory judgment to quiet title in plaintiffs as to real property in which the United States, by and through the FDIC claims an interest. Plaintiffs brought suit against the FDIC in its corporate capacity, as well as against other record owners of interest. Only the FDIC has filed an answer. Plaintiffs' motion for summary judgment addresses only their claims regarding property interests asserted by the FDIC. This opinion, therefore, is limited to those claims.

### I. Facts

The underlying facts in this action are not in dispute. On July 23, 1971, James Nicholas and Christos Panopoulos (plaintiffs),[1] purchased the property at issue by Warranty Deed from Richard and Clara Belle Seaberg (sellers). In exchange for the deed, plaintiffs executed a promissory note in the amount of $98,000 to sellers. To secure the note, plaintiffs also executed a mortgage in favor of sellers on July 23, 1971. This mortgage was properly recorded on August 9, 1971. The plaintiffs' July 23, 1971 mortgage incorporated by its terms the purchase agreement between the plaintiffs and the sellers. Pursuant to the terms of the agreement, plaintiffs were informed that the sellers' title to the property was subject to a $35,000.00 mortgage sellers had executed and sellers agreed

---

1. The other two plaintiffs in this action are the purchasers' wives with rights of survivorship in the property.

that plaintiffs would make their initial payments to the bank to pay off that mortgage.[2]

On May 18, 1971, the sellers had executed a prior mortgage on the property at issue to secure a loan for $35,000.00 from the National Bank & Trust Company of Traverse City. The sellers' mortgage provides, in relevant part, that it secures:

> the payment of whatever sums of money the [sellers] have this day borrowed ..., or may now or at any future time owe the said Mortgagee ... by notes ... whenever the same become due and payable, according to the terms thereof, but not to exceed the principal sum of Thirty–Five Thousand and no/100 ($35,-000.00) dollars.... This indenture is intended as continuing collateral security for the repayment of any indebtedness or liability as aforesaid.

Mortgage, May 18, 1971. This mortgage was duly recorded on May 20, 1971.

Subsequent to the sellers transferring title of the property to plaintiffs by way of a valid warranty deed, sellers took out two additional loans from the National Bank & Trust Company of Traverse City (Bank) and allegedly used their claimed continuing interest in this property as security. On or about November 3, 1977, sellers executed to the Bank a promissory note for $29,-400.00, secured by their May 18, 1971 mortgage, pursuant to its "dragnet clause."[3] The Note explicitly provides that it was "secured by a collateral form mortgage dated May 18, 1971, and all the terms and conditions thereon are made a part hereof." Approximately five years later on March 30, 1982, sellers obtained another loan from the Bank for $20,540.00. Sellers secured this last loan by assigning their interests under the plaintiffs' July 23, 1971 mortgage. The assignment was duly recorded on or about April 2, 1982. This second Note specifically provides that it "is secured by an Assignment of Mortgage dated March 30, 1982, and all the terms and conditions thereon are made a part thereof."

Subsequent to all of these transactions, the National Bank & Trust Company of Traverse City experienced financial difficulties and failed. In 1984, the FDIC entered into a purchase and assumption agreement with another bank, the assuming bank, whereby the assuming bank purchased all the assets of the failed bank it deemed acceptable. The FDIC purchased the unacceptable assets of the failed bank. Among the alleged assets that the FDIC purchased were the promissory note executed March 30, 1982, the assignment of the plaintiffs' July 23, 1971 mortgage, and sellers' May 18, 1971 mortgage.[4]

Plaintiffs claim that the sellers' May 18, 1971 mortgage was discharged as a matter of law when the mortgage note and sellers' first note were paid off. Therefore, plaintiffs argue, any alleged subsequent advances against the sellers' mortgage after it was discharged are not valid. The March

---

**2.** The July 23, 1971 purchase agreement provides in relevant part:

> The interest of the Sellers in the aforesaid property is subject to a mortgage held by the National Bank & Trust Company, of Thirty Five Thousand ($35,000.00) Dollars. The Sellers agree to apply Seventeen Thousand Five Hundred ($17,500.00) Dollars of the initial payment against said mortgage and to apply a total of Five Thousand ($5,000.00) Dollars per year against the principal and interest presently owing National Bank & Trust Company. Sellers represent that the aforesaid payments are payments they are required to make under the mortgage and promissory note to the National Bank & Trust Company, and agree that Purchasers shall make the payments called for under the said mortgage and promissory note to the National Bank & Trust Company and shall receive credit on the

> promissory note and mortgage created by this agreement until the obligation of Sellers to National Bank & Trust Company has been discharged.

Purchase Agreement ¶ 7.

**3.** " '[A] dragnet clause is a mortgage provision which purports to make the real estate security for other, usually unspecified, debts which the mortgagor may already owe or may owe in the future to the mortgagee.' " *Commerce Fed. Sav. Bank v. FDIC,* 872 F.2d 1240, 1242 (6th Cir.1989) (citing G. Osborne, G. Nelson, D. Whitman, *Real Estate Finance Law* § 12.8, at 772 (1st ed. 1979)).

**4.** There is no apparent dispute that at the time FDIC acquired the Bank's assets, the first promissory Note, executed in November 1977, had been discharged.

1982 note executed by one of the sellers was secured by the assignment of plaintiffs' mortgage, not by the sellers' mortgage. Plaintiffs have paid the balance due under their July 23, 1971 mortgage and contend that they should have clear title to the property.

The FDIC admits that the loans given on May 18, 1971 and on November 3, 1977 have been discharged. The FDIC argues, however, that since the execution of the May 18, 1971 mortgage, there has been and continues to be a balance owing on the mortgage because of subsequent loans. The FDIC claims that pursuant to the terms of the plaintiffs' mortgage, which incorporates the purchase agreement including the transfer of the sellers' interest subject to the $35,000.00 mortgage and which was assigned to the Bank as security for sellers' second Note, plaintiffs' title to the property is subject to the Bank's prior interest pursuant to the May 18th mortgage, which in the FDIC's view, was the underlying security for the March 30th loan.

Thus, the only issue before the Court is whether the sellers' second Note, which has not been discharged, is, as a matter of law, properly secured by the sellers' May 18, 1971 mortgage, subject to which plaintiffs purchased the property.

Plaintiffs seek a declaratory judgment that: 1) their interest in the property is superior to the FDIC's interest; and 2) they are entitled to receive clear title to the property because they have paid the balance on only their July 23, 1971 mortgage.

The FDIC argues that the obligation of plaintiffs to the FDIC includes the money owed by sellers pursuant to the March 30, 1982 mortgage and secured by the assignment of the July 23, 1971 mortgage. The FDIC thus seeks a declaratory judgment holding that plaintiffs are obligated to pay all indebtedness, including the money owed on the March 30, 1982 Note in order to obtain a discharge of either of the May 18, 1971 mortgage or their July 23, 1971 mortgage.

## II. Standard

In reviewing a motion for summary judgment, this Court should only consider the narrow questions of whether there are "no genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ. Proc. 56(c). On a Rule 56 motion, the Court cannot try issues of fact, but is empowered to determine only whether there are issues in dispute to be decided in a trial on the merits. *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987); *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The crux of the motion is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986); *see Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1310 (6th Cir.1989).

A motion for summary judgment requires this Court to view " 'inferences to be drawn from the underlying facts . . . in the light most favorable to the party opposing the motion.' " *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)), *quoted in Historic Preservation Guild of Bay View v. Burnley*, 896 F.2d 985, 993 (6th Cir.1989). The opponent, however, has the burden to show that a "rational trier of fact [could] find for the non-moving party [or] that there is a *'genuine issue for trial.'* " *Historic Preservation*, 896 F.2d at 993 (quoting *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356).

As the Sixth Circuit has recognized and consistently emphasized, recent Supreme Court decisions have encouraged the granting of summary judgments. *Historic Preservation*, 896 F.2d at 993 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Courts have noted that the summary judgment

motion may be an "appropriate avenue for the 'just, speedy and inexpensive determination' of a matter." *Cloverdale Equipment Co. v. Simon Aerials, Inc.*, 869 F.2d 934, 937 (6th Cir.1989) (quoting *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2554–55). Consistent with the concern for judicial economy, "the mere existence of a scintilla of evidence in support of the [non-moving party's] positions will be insufficient." *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512. "Mere allegations do not suffice." *Cloverdale*, 869 F.2d at 937. "[T]he party with the burden of proof at trial is obligated to provide concrete evidence supporting its claims and establishing the existence of a genuine issue of fact." *Id.*

### III. Discussion

This Court has jurisdiction over plaintiffs' complaint pursuant to 12 U.S.C. § 1819(b)(2)(A), which provides in relevant part that "all suits of a civil nature at common law or in equity to which the Corporation, in any capacity, is a party shall be deemed to arise under the laws of the United States."

The dispute involves only the money due pursuant to the sellers' second note executed on March 30, 1982. As security for the note, the sellers assigned to the Bank their interests as mortgagees on the plaintiffs' July 23, 1971 mortgage of the property. The issue is whether the assignment of that mortgage subjects plaintiffs' rights in the property not only to the $35,000.00 mortgage sellers executed on May 18, 1971, but also to sellers' March 30, 1982 debt of $20,540.00.

There are significant facts about which the Court is left in the dark. None of the parties have presented evidence as to the time of the discharge of the initial $35,-000.00 debt and the subsequent $29,400.00 debt secured by the property at issue. Other than the FDIC's allegation of a continuing outstanding debt, the Court has no proof whether an outstanding balance existed on the May 18, 1971 mortgage at the time the sellers secured the March 30, 1982 loan. Plaintiffs do not dispute the FDIC's allegation of a continuing outstanding balance on the May 18, 1971 mortgage. Ac-

cordingly, for the purposes of this motion, the FDIC's allegation is taken as true.

Moreover, there is no evidence or even allegations regarding whether the sellers or the Bank notified plaintiffs of the March 30, 1982 assignment, although it is clear that the assignment was recorded with the register of deeds. There is no evidence or allegations regarding whether plaintiffs objected to the assignment at any time prior to instituting this action. Nor is it known or alleged whether plaintiffs paid their mortgage payments to the Bank, as the mortgagee's assignor, or subsequently to the FDIC. Finally, there is no evidence regarding the balance of the principal on plaintiffs' mortgage at the time of the March 30, 1982 assignment. The FDIC reports that as of March 9, 1984, the outstanding balance on the sellers' notes was $17,549.24, plus interest. As of May 1990, the FDIC states the balance due was $14,-765.11 plus interest. The Court assumes that because the parties have not attempted to disclose or clarify these facts, they are not material to the outcome of this dispute. The Court presumes that notice is not at issue and that the only issue is whether the assignment and the associated documents as written and agreed to encumber plaintiffs' title.

The parties state they seek a ruling as a matter of law regarding whether the assignment of plaintiffs' mortgage as security for the sellers' March 30, 1982 note encumbers plaintiffs' title to the property with the outstanding balance due on the note. In other words, the issue is whether the sellers further encumbered plaintiffs' title to the property—beyond the $35,-000.00 encumbrance under the May 18, 1971 mortgage, as stated in the purchase agreement—by taking a loan and assigning their rights pursuant to plaintiffs' mortgage as security.

When the FDIC purchases unacceptable assets, it is acting in its corporate capacity and federal law applies. *Fed. Deposit Ins. Corp. v. Wood*, 758 F.2d 156, 159 (6th Cir.), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985). In *D'Oench, Duhme & Co. v. FDIC*, 315 U.S.

447, 461, 62 S.Ct. 676, 681, 86 L.Ed. 956 (1942), the Supreme Court held that the federal policy of protecting the FDIC's reliance on bank documents and assets at the time it decides how to resolve failed bank situations outweighs defenses arising from collateral or hidden agreements about which the FDIC had no knowledge or notice at the time.

 Congress codified the *D'Oench* holding in section 1823(e), 12 U.S.C. § 1823(e), which provides that "no agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it ... shall be valid against the Corporation" except under specific conditions. *See Wood*, 758 F.2d at 159. "The purpose [of section 1823(e)] is to protect the FDIC from hidden agreements that would defeat its interest in what is otherwise a facially valid note." *FDIC v. Hatmaker*, 756 F.2d 34, 37 (6th Cir.1985). Section 1823(e) does not apply when an asset is allegedly invalid on its face, rather than because of some hidden or collateral agreement. *Commerce Fed. Sav. Bank v. FDIC*, 872 F.2d 1240, 1245 (6th Cir.1989) (quoting *FDIC v. Merchants Nat'l Bank of Mobile*, 725 F.2d 634, 639 (11th Cir.), *cert. denied*, 469 U.S. 829, 105 S.Ct. 114, 83 L.Ed.2d 57 (1984)).

 The Sixth Circuit held in *Wood* that "when the FDIC in its corporate capacity, as part of a purchase and assumption transaction, acquires a note in good faith, for value, and without actual knowledge of any defense against the note, it takes the note free of all defenses that would not prevail against a holder in due course." *Id.* at 161. The FDIC cannot be charged with knowledge of a defense when evidence of it exists in the bank files because the FDIC has no duty to investigate the bank's assets before the purchase and assumption agreement. *Gilman v. FDIC*, 660 F.2d 688, 694–95 (6th Cir.1981).

Plaintiffs' defense in this case exists on the face of the documents which the FDIC purchased, not in any hidden or collateral agreement in the bank files. Section 1823(e) thus does not apply. Moreover, the defense plaintiffs assert is based on the express language of the documents at issue. Plaintiffs have paid off their mortgage. The sellers, however, have not paid off the second note. If valid, the defense would defeat the interests of a holder in due course. What is at issue is whether the obligations plaintiffs assumed in their mortgage, which the sellers assigned to the Bank, include sellers' outstanding debt under their second note. Plaintiffs argue that their mortgage did not include an obligation to pay off future loans sellers were able to secure pursuant to the dragnet clause of their May 18, 1971 mortgage. The FDIC argues that according to the terms of the incorporated purchase agreement, plaintiffs' title to the property was subject to the sellers May 18, 1971 mortgage and any future loans sellers secured under the mortgage's dragnet clause.

Plaintiffs purchased the property with a promissory note for $98,000.00. The FDIC has the warranty deed representing this purchase, which was duly recorded a few weeks later. Plaintiffs secured the note with a mortgage in favor of the sellers. The mortgage expressly states that it incorporates the terms of the purchase agreement. The purchase agreement, in turn, provides that the plaintiffs' interest in the property is subject to "a mortgage held by the National Bank & Trust Company, of Thirty Five Thousand ($35,000.00) Dollars." The agreement then describes how plaintiffs must discharge that $35,000.00 mortgage. The agreement says nothing about liability for or encumbrances resulting from future loans sellers may try to obtain. The agreement does not state that it incorporates the terms of sellers' May 18, 1971 mortgage, which admittedly does include a dragnet clause allowing sellers to obtain future loans. On the contrary, the agreement expressly states only that plaintiffs' property interest is subject to the $35,000.00 mortgage.

 I find that plaintiffs' title to the property was and is not encumbered by the sellers' second Note to the extent that it represents an obligation for a debt beyond that owed by plaintiffs' pursuant to their $98,000.00 purchase agreement. There is no apparent dispute that plaintiffs have

paid off their $98,000.00 debt. The purchase agreement stated plaintiffs' interest in the property was subject to the $35,000.00 mortgage and note. That $35,000.00 has been paid.

The FDIC holds the sellers' original mortgage, the warranty deed transferring title to the plaintiffs, the purchase agreement, and the plaintiffs' mortgage. There is nothing on the face of the plaintiffs' mortgage or the purchase agreement providing that plaintiffs' interest in the property would be subject to other terms of the sellers' mortgage. Neither the purchase agreement nor plaintiffs' mortgage incorporate the terms of sellers' mortgage. There is nothing on the face of plaintiffs' purchase agreement or plaintiffs' mortgage to demonstrate that when plaintiffs purchased the property, their interest in the property was subject not only to the $35,000.00 mortgage sellers had executed in favor of the Bank, but also to any future loans that the sellers secured under the mortgage's dragnet clause. On the contrary, the purchase agreement provides that as the plaintiffs made payments, they would receive credit on the $35,000.00 mortgage and note (singular) until the mortgage was discharged. Accordingly, I find that when the sellers assigned their rights under plaintiffs' mortgage to the Bank, they transferred only their right to receive the $98,000.00 plus interest from plaintiffs, which payment would be applied to pay off the $35,000.00 debt owed by sellers pursuant to their mortgage. Neither the July 23, 1971 purchase agreement or mortgage gave sellers the right to future loans on their interest in the property. The FDIC did not have to do anything more than look carefully at these conveyance documents to learn that plaintiffs' interest in the property, under the terms of their mortgage and purchase agreement, was not subject to the dragnet clause contained in the sellers' May 18, 1971 mortgage.

For the above reasons, I find that upon payment of their $98,000.00 mortgage, which payment discharged sellers' prior $35,000.00 debt owed under the May 18, 1971 mortgage, plaintiffs received title to the property clear of any interest held by the FDIC. Any rights that the FDIC has in the property pursuant to sellers' note and assignment of plaintiffs' mortgage are now secondary to plaintiffs' interest in the property according to the July 23, 1971 warranty deed and purchase agreement.