**FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff–Appellee,**

v.

**Gayle W. BINION, Defendant–Appellant.**

**No. 90–5762.**

United States Court of Appeals, Sixth Circuit.

Argued May 2, 1991.

Decided Aug. 16, 1991.*

---

* This decision was originally issued as an "un-published decision" filed on August 16, 1991.

On November 18, 1991, the court designated the

D. Craig Dance, Cors, Bassett, Kohlhepp, Halloran & Moran, Cincinnati, Ohio, for plaintiff-appellee.

Garis L. Pruitt, Pruitt & Mussetter, Catlettsburg, Ky., for defendant-appellant.

opinion as one recommended for full text publication.

** The Honorable Douglas W. Hillman, Senior United States District Judge for the Western District of Michigan, sitting by designation.

Before KEITH and MILBURN, Circuit Judges, and HILLMAN, Senior District Judge.**

PER CURIAM.

Gayle T. Binion (also referred to in the record as Gayle Wood) ("defendant") appeals from the district court's April 26, 1990, order granting summary judgment for the Federal Deposit Insurance Corporation ("FDIC" or "plaintiff") and the May 30, 1990, order granting plaintiff attorney's fees. Plaintiff brought this action to recover from defendant money due on promissory notes executed by defendant and her husband, Clayton Binion.[1] For the reasons set forth below, we AFFIRM.

I.

A.

The FDIC brought this action in its corporate capacity as assignee of the receiver of the People's Bank (the "Bank") of Olive Hill, Kentucky, pursuant to a purchase and assumption transaction. The action was originally filed in the Boyd Circuit Court by the original promisee, the Bank, to enforce payment of three promissory notes signed by defendant and Clayton Binion. The FDIC seeks collection of these notes from various real and personal properties given as collateral for the loans. Defendant claims that a defense of material and fraudulent alteration of the notes with regard to the property given as collateral discharges her obligation to pay.

Note I, dated June 24, 1983, in the amount of $13,051.69, was secured by a real estate mortgage on property located in the City of Ashland, Boyd County, Kentucky (the "Kentucky property").

Note II, dated September 6, 1983, was secured by the mortgage on the Kentucky property under its additional advance clause and by a new mortgage executed simultaneously on real estate located in the

1. Gayle and Clayton Binion were divorced on April 30, 1984.

City of Ironton, Lawrence County, Ohio (the "Ohio property").

Note III, dated October 21, 1983, in the amount of $20,611, was secured by the mortgage on the Ohio property under its additional advance clause and some personalty of no consequence to this action.

Defendant contends that Note II was materially and fraudulently altered by Bank officials and that the alteration discharged her obligation to pay under the note. Defendant asserts that the Ohio property was not originally part of the security offered for Note II.

Note II was in part the renewal of Note I in the amount of $13,051.31 and in part the loan of additional money in the amount of $36,948.31. A comparison of the bank's original note and defendant's copy reveals that some language was added to the original note after it was signed. The additional notations pertain to the loan number, the loan amount and the identification of real estate collateral for the note. The loan number was filled in on the bank's copy after its execution. The loan amount on the bank's copy was originally shown as $52,280.40, the principal amount of the loan. It was crossed out after execution and changed to read $61,421.65, an amount equal to the total of payments (including interest) due at maturity. Paragraph 4 of Note II relates to real estate collateral for the loan under a separate mortgage. Note II as originally executed referred to a real estate mortgage, but left the date blank. After execution, the bank filled in the date of the mortgage and the recording data for the Ohio property described in the mortgage which defendant executed simultaneously with Note II. Another reference to the Kentucky and Ohio properties was inserted after execution in that portion of Note II pertaining to fixture filings. On the same day Note II was executed, defendant signed five other documents as part of the same loan transaction: (1) a mortgage; (2) a loan application; (3) truth in lending disclosures; (4) a loan disbursement sheet; (5) an insurance agreement.

The loan application identifies both the Kentucky and Ohio properties as the subject of first mortgage liens to be granted to the bank for the loan. The truth in lending disclosure indicates that the loan was secured by a security interest in real estate. The loan disbursement sheet allocates the disbursement of the loan proceeds and recites the total payments as $61,421.65. The figures on the note, loan disbursement sheet and the truth in lending disclosure are consistent with each other and call for a total payment of $61,421.65 at maturity. This figure appears in two separate locations in the body of Note II, in addition to the area of the alteration. The insurance agreement recites a loan and mortgage, requires defendant to keep the Ohio property insured, and grants the bank the right to be listed as mortgagee on the insurance policies covering the Ohio property to protect its interest in the event of damage. The insurance company shown on the agreement is Republic Insurance Company with an insured amount of $90,000. The policy referred to is the policy covering the Ohio property as evidenced by several renewal declarations issued by the insurance company on file with the bank in accordance with the insurance agreement.

The mortgage describes the Ohio property referred to in Note II, the loan application and the insurance agreement. It specifically refers to a note of $61,421.65 to mature on September 5, 1984, as the indebtedness for which it is security and includes additional indebtedness up to a maximum of $15,000.

### B.

On August 17, 1984, the Bank commenced this action against Clayton and Gayle Binion in the Boyd Circuit Court. Clayton Binion filed an answer raising the defense that Note II was materially altered. Gayle Binion filed a separate answer and asserted a counterclaim alleging that Note II was forged by bank officials who added, after execution, the notation that it was secured by both the Kentucky and Ohio mortgages.

On December 3, 1987, the Commissioner of Banking for the Commonwealth of Kentucky closed the Bank. The FDIC became

receiver of the Bank and in turn assigned all its assets and claims to the FDIC in its corporate capacity. On December 4, 1987, the Carter Circuit Court entered an order transferring by sale all loan assets of the liquidated bank to the FDIC in its corporate capacity. On December 11, 1987, the FDIC was substituted in this action as party plaintiff before the Boyd Circuit Court. On December 16, 1987, pursuant to 12 U.S.C. § 1819, the FDIC filed a petition for removal in the United States District Court for the Eastern District of Kentucky at Ashland.

On October 14, 1988, plaintiff moved for summary judgment. On June 12, 1989, the district court granted partial summary judgment in favor of plaintiff on the ground that the FDIC was the equivalent of a holder in due course and therefore not subject to the fraud defense asserted by defendant. Accordingly, the district court determined that the FDIC was entitled to a judgment against defendants for the remaining indebtedness in default on Notes II and III.

The case proceeded to trial on February 20, 1990, on the remaining issue of fact concerning whether there was an alteration to the agreement and, if so, the original tenor of Note II. At trial, subsequent to the FDIC's cross examination of Gayle Binion, the parties reached a tentative settlement after which the jury was discharged.[2] The parties failed to consummate the agreement, however, because of a dispute over the value of the Ohio collateral. Thereafter, upon the district court's instructions, the FDIC moved for summary judgment on March 23, 1990. On April 26, 1990, the district court granted plaintiff's motion and directed the FDIC to make application for attorney's fees. Defendant was simultaneously directed to respond to plaintiff's application for attorney's fees within the time provided under Local Rule 6(b)(1)(A). Local Rule 6(b)(1)(A) states that "[f]ailure to file an opposing memorandum may be grounds for granting the motion." The FDIC filed its application for attorney's fees on May 25, 1990. Defendant did not respond to the FDIC's motion for attorney's fees as ordered by the district court. On May 30, 1990, the district court awarded the FDIC attorney's fees based upon the FDIC's motion and affidavit. Defendant Gayle Binion filed a timely notice of appeal on May 29, 1990.

## II.

### A.

We review the district court's grant of summary judgment de novo. *See EEOC v. University of Detroit*, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is proper where there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

On appeal, defendant argues that the district court erred in finding that the holder in due course doctrine was applicable to the FDIC where the counterclaim raising the defense of material and fraudulent alteration had been pled four years before the FDIC became the holder of the note. Defendant contends that the FDIC had actual knowledge of defendant's defense at the time the FDIC acquired the note and was substituted for the Bank in this action; therefore, the requirement that the holder in due course take the note without actual knowledge of any defense cannot apply to plaintiff. According to defendant, the correct result is to discharge defendant's obligation to pay under the note because the Ohio property was fraudulently added as collateral.

The FDIC argues that it is the equivalent of a holder in due course and had no actual knowledge of the lawsuit nor defendant's defenses raised therein and, moreover, the FDIC is presumed to be operating without actual knowledge of any defenses to the note. We find the FDIC's argument persuasive.

**2.** On March 5, 1990, default judgment was entered against Clayton Binion.

We need not reach defendant's argument that the alterations to the note were material and fraudulent because the outcome in this case is controlled by *Federal Deposit Ins. Corp. v. Wood,* 758 F.2d 156 (6th Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985). In *Wood* this Court held that when, as part of a purchase and assumption transaction, the FDIC in its corporate capacity "acquires a note in good faith, for value, and without actual knowledge of any defense against the note, it takes the note free of all defenses that would not prevail against a holder in due course." *Id.* at 161. The FDIC, in its corporate capacity, acquired the note as part of a purchase and assumption agreement. Defendant does not dispute that the FDIC acquired the note in good faith and for value.

Thus, the remaining question is whether the FDIC had actual knowledge of defendant's counterclaim that the note was fraudulently altered and therefore will not be the equivalent of a holder in due course. There is a presumption that the FDIC had no knowledge of any defenses. *See Federal Deposit Ins. Corp. v. Armstrong,* 784 F.2d 741, 745 (6th Cir.1986) (citing *Wood,* 758 F.2d at 162). *Wood* requires that actual knowledge be shown as of the date the FDIC entered into the purchase and assumption transaction in order to deprive the FDIC of protection equivalent to that of a holder in due course. *Wood,* 758 F.2d at 162. There is nothing in the record to indicate that the FDIC knew of defendant's counterclaim on or before the date the FDIC entered into the purchase and assumption transaction. The FDIC cannot be charged with knowledge of a defense merely because it could have been found in the bank's files. *Id.* The FDIC is under no duty to examine the assets of a failed bank before it agrees to execute a purchase and assumption transaction. Summary judgment is proper for the FDIC where, as here, insufficient specific facts have been produced showing there is a genuine issue of material fact regarding the FDIC's knowledge. *See Armstrong,* 784 F.2d at 745–46.

Defendant ignores the foregoing precedent and argues that the FDIC is not the equivalent to a holder in due course. Defendant argues that the FDIC had actual knowledge because the original action was brought by the Bank and the defenses to the note were raised by defendant in her answer prior to the FDIC's appointment as receiver or the FDIC's acquisition of the note under the purchase and assumption agreement. Thus, according to defendant, the FDIC actually knew of her defenses prior to purchase of the note or at least must be charged with actual knowledge because the records of the bank would have revealed the lawsuit and her defenses, if reviewed prior to purchase. This argument is wholly without merit.

Defendant has not shown, beyond bare allegations based on the prior existence of the lawsuit, that the FDIC had actual knowledge of defendant's defense as of the date that the FDIC entered into the purchase and assumption transaction, December 4, 1987. We find nothing in the record to substantiate defendant's claim of the FDIC's actual knowledge. The mere existence of defendant's counterclaim for several years prior to the FDIC's acquisition of the failed Bank's assets does not establish that the FDIC had actual knowledge of defendant's claim of material and fraudulent alteration prior to December 4, 1987. In this case, as in *Wood,* defendant's assertion that the FDIC had actual knowledge of the defense is based only on the fact that an examination of the failed Bank's records would have put the FDIC on notice. *Wood,* 758 F.2d at 162. This allegation by defendant is not sufficient to overcome the presumption that the FDIC had no actual knowledge of any defense.

We stress that the FDIC is not required to examine the assets of a failed bank before entering into a purchase and assumption transaction. Furthermore, it will not be charged with actual knowledge of what might have been discovered by such an examination. *Wood,* 758 F.2d at 162. Therefore, the FDIC in this case is the equivalent of a holder in due course since it took the instrument for value, in good faith and without actual knowledge of any de-

fense against or claim to the note in question. *See id.* at 161. It is therefore protected from the defense based on fraud and was entitled to judgment on the promissory notes.

### B.

Defendant appeals the district court's award of attorney's fees to plaintiff. Defendant failed to respond to plaintiff's motion for attorney's fees before the district court and raises objections for the first time on appeal. Defendant therefore waived any objection she had to both plaintiff's application for and the district court's award of attorney's fees. *See Sun Refining & Marketing Co. v. Brennan,* 921 F.2d 635, 638 (6th Cir.1990) (citing *Bannert v. American Can Co.,* 525 F.2d 104, 111 (6th Cir.1975), *cert. denied,* 426 U.S. 942, 96 S.Ct. 2662, 49 L.Ed.2d 394 (1976) (objections not raised in the district court cannot be raised on appeal)). Therefore this issue is not properly before us on appeal.

### III.

For the foregoing reasons, we AFFIRM the April 26, 1990, and May 30, 1990, judgments of the Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky.