79 F.3d 1148
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HUMAN SERVICES PLAZA PARTNERSHIP; Howard Shanker,
Plaintiffs-Appellants, Cross-Appellees
v.
The HUNTINGTON NATIONAL BANK; the Huntington Mortgage
Company; The Huntington Company,
Defendants-Appellees and Cross-Appellants.
 Nos. 94-3362, 94-3365.
 United States Court of Appeals, Sixth Circuit.
 March 15, 1996.
 
 Before: MARTIN, NORRIS, and MOORE, Circuit Judges.
 PER CURIAM.
 
 
 1
 Determining that they had the skill to construct a building and lease it to the Cuyahoga County Welfare and Human Services department, three businessmen formed the Human Services Plaza Partnership for this project. Of the three original partners, only Howard Shanker is still involved in this litigation. Prior to forming the partnership in August 1988, the men sought funds for land acquisition and construction financing. Following discussions with approximately twelve financial institutions, the Partnership decided to work with Anthony Caruso, then a Vice President with the Huntington Mortgage Company.[1]
 
 
 2
 On July 8, 1988, Caruso, Shanker and Shanker's partner, David Owen, executed a multi-page commitment letter for an $825,000 site assembly and business relocation loan. This transaction proceeded without complication. Negotiations continued between the parties regarding complete financing of the project, and the parties discussed a financing transaction whereby Huntington National Bank would issue a seventy-eight month, $23,500,000 Letter of Credit to insure payment of bonds to be sold to investors by The Huntington Company.
 
 
 3
 On December 30, the Bank presented to the Partnership an eleven-page commitment letter in support of a Letter of Credit to be issued in the amount of $23,500,000. The commitment letter contained a condition that the Bank was limiting its participation to $8,000,000. The Partnership refused to sign the commitment letter. This litigation commenced because the Partnership claimed that Caruso had already orally committed the Bank in early November 1988 to issue the $23,500,000 Letter of Credit without a participation limitation.
 
 
 4
 On May 4, 1990, the Partnership filed suit in federal district court alleging violations of the Bank Holding Company Act, 12 U.S.C. § 1972, and stating several state law claims. On May 21, 1993, a jury returned a verdict for the Partnership on its breach of contract claim (Count II) only. The jury found that Caruso made an oral promise within the scope of his apparent authority committing the Bank to issue the $23,500,000 Letter of Credit. Both parties filed motions for judgment as a matter of law. Fed.R.Civ.P. 50(b).
 
 
 5
 In a fifty-three page opinion, the district court granted the defendants' motion for judgment as a matter of law and denied the Partnership's motion. In granting the defendants' motion, the district court concluded that there was insufficient evidence to support the jury's finding that Caruso had apparent authority to orally commit the Bank to issue this Letter of Credit. The court also determined that the oral contract had to be reduced to writing pursuant to Ohio's Statute of Frauds and that no writing existed to satisfy this requirement. Both parties filed timely appeals.[2] Because we agree with the district court's decision, we AFFIRM.
 
 
 6
 In reviewing a district court's decision to grant judgment as a matter of law under Fed.R.Civ.P. 50(b), we apply the same standard as the district court.[3] Phelps v. Yale Security, Inc., 986 F.2d 1020, 1023 (6th Cir.), cert. denied, 114 S.Ct. 175 (1993). That standard is the same as for the "forerunner to this motion, the motion for judgment notwithstanding the verdict." Black v. Ryder/P.I.E. Nationwide, Inc., 15 F.3d 573, 583 (6th Cir.1994). Our task on appeal is to determine de novo "whether there [was] sufficient evidence to raise a question of fact for the jury." Marsh v. Arn, 937 F.2d 1056, 1060 (6th Cir.1991) (citation omitted). In viewing the evidence, this Court must not engage in making credibility determinations, or weigh the evidence, but must draw all inferences in a light most favorable to the non-moving party. Id. We affirm if "there is either a complete absence of proof on the issues or no controverted issues of fact upon which reasonable persons could differ." Monette v. AM-7-7 Baking Co., Ltd., 929 F.2d 276, 280 (6th Cir.1991) (citation omitted). As to a district court's interpretation of state law, our review is de novo. Spence v. Miles Lab., Inc., 37 F.3d 1185, 1188 (6th Cir.1994) (citing Salve Regina College v. Russell, 499 U.S. 225, 231 (1991)).
 
 
 7
 The Partnership raises four issues on appeal. First, the Partnership contends that the district court erred in deciding that there was insufficient evidence to support a finding that Caruso had apparent authority to orally commit the Bank for a $23,500,000 Letter of Credit. The district court concluded based on the evidence presented at trial that a jury could not reasonably infer that the Bank held Caruso out as having the authority to orally commit the Bank to issue a $23,500,000 Letter of Credit. We agree.
 
 
 8
 Where apparent authority of an agent to bind a principal is at issue, the evidence must show:
 
 
 9
 1) that the principal held the agent out to the public as possessing sufficient authority to embrace the particular act in question, or knowingly permitted him to act as having such authority, and
 
 
 10
 2) that the person dealing with the agent knew of the facts and acting in good faith had reason to believe and did believe that the agent possessed the necessary authority.
 
 
 11
 Master Consolidated Corp. v. BancOhio National Bank, 575 N.E.2d 817, 822 (Ohio 1991); see also, Ameritrust Co. National Assoc. v. Hicks Dev. Corp., 632 N.E.2d 939, 942 (Ohio Ct.App.1993) (stating that "[t]he existence and scope of apparent authority are determined by virtue of the manifestations of the principal rather than those of the putative agent") (citation omitted). Especially relevant to this case, Master Consolidated requires a Bank to hold out an agent or to knowingly permit an agent to act as having sufficient authority to "embrace the particular act in question." 575 N.E.2d at 822 (emphasis added).
 
 
 12
 The Partnership argues here, as it did to the district court, that the Bank held Caruso out as a "Relationship Banker," a person having the authority to orally commit to any transaction he structured, and relies on Caruso's alleged statement that the financing was a "done deal." The Partnership also relies on their prior dealing with Caruso with regard to the $825,000 loan as sufficient proof of a "holding out" regarding Caruso's alleged $23,500,000 Letter of Credit lending authority. The Partnership argues that Caruso made an oral commitment to make the first loan and that "this action was thereafter ratified by [the Bank] by providing the $825,000 loan.... It was reasonable for the jury to conclude that [the Partnership] learned from the first experience with Caruso that when he made an oral promise, [the Bank] honored it, and that he could be trusted." Appellants' Brief, p. 21. Finally, the Partnership contends that a jury could infer that Caruso had apparent authority to approve the Letter of Credit because the Partnership had no way of knowing Caruso's actual authority due to the confidentiality of the Bank's internal loan approval process.
 
 
 13
 We agree with the district court that the evidence does not support a finding that the defendants held Caruso out as having authority to orally commit the Bank to issue a $23,500,000 Letter of Credit. The most favorable inference one could draw from the defendants' generalized advertisements about having Relationship Bankers, as well as the evidence of the partners' dealings with Caruso on the $825,000 loan, would be that Caruso had the apparent authority to structure financing for a commercial project and could orally commit the Bank to make a real estate-related commercial loan for an amount at or below $825,000. Nevertheless, the Partnership insists that it was reasonable for the jury to conclude that if Caruso made an oral promise for a $23,500,000 Letter of Credit the Bank would honor it.
 
 
 14
 None of this evidence permits reasonable minds to conclude that Caruso had the apparent authority to orally commit the Bank to issue a $23,500,000 Letter of Credit. Furthermore, Caruso's enigmatic comment about the financing being a "done deal" is a "holding out" by the agent and not the principal, as required by Master Consolidated. 575 N.E.2d at 822. Finally, we strongly disagree with the Partnership's claim that it would be reasonable to infer that Caruso had apparent authority to approve a loan of over $23,000,000 based on the Partnership's ignorance of the extent of Caruso's actual authority. The Bank's action in keeping Caruso's actual authority a confidential matter is not a "holding out" of Caruso as having any type of apparent lending authority whatsoever. Because we find no evidence to support the jury's verdict as to the first prong of Master Consolidated, we need not address the issue of whether the partners could have believed, in good faith, that Caruso had the apparent lending authority to commit the Bank to issue a $23,500,000 letter of credit.
 
 
 15
 We also agree with the district court's decision to grant judgment as a matter of law on the ground that Ohio's Statute of Frauds was not satisfied. The pertinent section of Ohio's Statute of Frauds, Ohio Rev.Code § 1335.05 provides:
 
 
 16
 No action shall be brought whereby to charge the defendant ... upon a special promise, to answer for the debt, default, or miscarriage of another person ... or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.
 
 
 17
 The Partnership makes an elaborate argument that there are actually three contracts involved in this financing transaction, but ultimately admits that the Bank's "promise to provide financing" is the promise which must conform to the Statute of Frauds. Appellants' Brief at 3, 35. As stated in their breach of contract claim, the "financing" was the Letter of Credit "loan" to the Partnership. Complaint, J.A. at 81-82. The Partnership next contends that the "financing" was to close by December 30, 1988, or within forty-five days of the oral commitment to provide the Letter of Credit, thus making this oral promise one that was to be performed within one year and therefore unenforceable without a writing. The Partnership has also represented to this Court that the financing was a seventy-eight month Letter of Credit. Appellants' Brief at 7. While the precise terms of this Letter of Credit are not clear, it appears from the parties' briefs, as well as from the November 8 letter alleged by the Partnership to contain the terms of the contract, that both parties contemplated performance after the closing date. We are not convinced that the "closing" of the loan is the totality of the "performance" both parties were bargaining for in this financing transaction.
 
 
 18
 The central question in this case, then, is whether a seventy-eight month Letter of Credit is a contract which may not be performed within one year, thus requiring a writing. Clarifying longstanding Ohio law, the Ohio Supreme Court in Sherman v. Haines, 652 N.E.2d 698 (Ohio 1995), observed:
 
 
 19
 For over a century, the "not to be performed within one year" provision of the Statute of Frauds, in Ohio and elsewhere, has been given a literal and narrow construction. The provision applies only to agreements which, by their terms, cannot be fully performed within a year, and not to agreements which may possibly be performed within a year. Thus, where the time for performance under an agreement is indefinite, or is dependent upon a contingency which may or may not happen within a year, the agreement does not fall within the Statute of Frauds.
 
 
 20
 Id. at 700 (citations omitted). Applying this interpretation of the Statute of Frauds to a loan transaction, Haines held that an alleged oral agreement providing that the appellant would pay a $3,000 debt in monthly installments of $25.00 was, by its express terms, an agreement that necessarily required one hundred and twenty months to perform. Because the term was not indefinite and the parties had not agreed to an early payoff option, the Ohio Supreme Court held that this contract had to be in writing to be enforceable. Id. at 701.
 
 
 21
 The Partnership cites no Ohio case law to support their contention that this seventy-eight month letter of credit might possibly be performed within one year. The defendants cite Vukelic v. Unibank, 1992 WL 214470 (Ohio Ct.App.1992) (unpublished). There is a paucity of Ohio law on point, and Vukelic is the most analogous authority on these facts. In Vukelic, the plaintiff claimed that the defendant orally committed to issue a letter of credit which was to function in the place of a surety bond guaranteeing plaintiff's construction of two municipal building projects that would take more than a year to complete. The Ohio Court of Appeals concluded that "it is undisputed that the letter of credit would have to last more than a year. Thus, by statute and as matter of law, there is no contract to issue a letter of credit unless it exists in writing and is signed by the issuer." Id. at * 3 (citation omitted).
 
 
 22
 In this case, the record shows that the $23,500,000 Letter of Credit was to last at least until January 15, 1994, and that persons entitled to draw on the letter could do so until 10:00 a.m. on that date. J.A. at 1128 (Commitment Letter, December 30, 1988); J.A. at 1436 (Preliminary Discussion Material, October 22, 1988) (Letter of Credit to expire five years after Notes issued). The payment schedules listed in the Preliminary Discussion Material show that the Partnership would be liable for annual fee payments for the Letter of Credit and the defendants represent that the Partnership was to pay a fee of $235,000/year for the Letter of Credit. Appellees' Brief at 9. The Partnership has not directed our attention to, nor can we find, an early termination provision or a contingency showing that performance might be possible within a year.[4] Therefore, as a matter of law, this seventy-eight month letter of credit must be reduced to a writing sufficient to satisfy Ohio's Statute of Frauds.
 
 
 23
 The Partnership argues that a writing to satisfy the Statute of Frauds exists--the November 8, 1988 letter from the Bank, initialled by Caruso, Shanker and Owen on November 23. J.A. at 1390 (November 8 letter). However, this letter is not a writing or memorandum which satisfies Ohio's Statute of Frauds. By its terms, this letter is a preliminary negotiating document. Quoting a leading Ohio Supreme Court case on the requirements of a writing to satisfy the Statute of Frauds, the Ohio Court of Appeals in Beggin v. Fort Worth Mortgage Corp. has stated:
 
 
 24
 The memorandum in writing which is required by the statute of frauds [R.C. 1335.05] is a memorandum of the agreement between parties, and it is not sufficient unless it contains the essential terms of the agreement expressed with such clearness and certainty that they may be understood from the memorandum itself, or some other writing to which it refers, without the necessity of resorting to parol proof.
 
 
 25
 638 N.E.2d 604, 608 (Ohio Ct.App.), appeal not allowed, 637 N.E.2d 11 (Ohio 1994) (quoting Kling v. Bordner, 61 N.E. 148, 148 (1901)) (other citations omitted); accord Schafer v. Faylor, 60 N.E.2d 339, 341 (Ohio Ct.App.1944).
 
 
 26
 The November 8 letter, as a matter of law, does not satisfy the Ohio Statute of Frauds because by its terms it is a preliminary document; it does not purport to set forth the terms of the parties' agreement with certainty. The November 8 letter includes the following paragraph:
 
 
 27
 A Preliminary Summary of Proposed General Terms is attached as Exhibit B.... The final terms and conditions of the Notes may vary from this preliminary summary, subject to negotiation and acceptance by you and all other parties to the transaction.
 
 
 28
 In addition, Exhibit B to the letter contains a paragraph stating that the Bank will issue the Letter of Credit "subject to final approval and acceptance of all legal documentation," J.A. at 1394, and also contains two conflicting dates--January 1996 (J.A. at 1394), and January 15, 1994 (J.A. at 1396)--regarding the termination date for the Letter of Credit. This express language shows an intent by the Bank that the terms in this letter are not final. Also, the dates conflict and it is not clear from the letter which date the parties agreed upon. Furthermore, the Partnership admits that this letter does not contain one essential term--the style of financing. "While [the November 8 letter], Attachment B, describes a Terminator transaction, it is undisputed that the parties had agreed to a MORAN style transaction on November 23, 1988." Appellants' Brief at 7. To be a writing that satisfies the Statute of Frauds, the writing must contain all essential terms or refer to another writing containing the missing terms without resort to parol proof. Here, the November 8 letter does not refer to another document containing the agreed to MORAN style financing term. Soteriades v. Wendy's Inc., 517 N.E.2d 1011, 1015 (Ohio Ct.App.1986) (stating that a document signed by the party to be charged must refer to other documents containing absent or material terms). The parties' alleged oral agreement on this term on November 23 is exactly the type of proof of an essential term that cannot be relied upon to satisfy the Statute of Frauds.
 
 
 29
 While the district court rejected this writing as satisfying the Statute of Frauds on several grounds, the district court's decision was correct because the November 8 letter explicitly states that it is a preliminary summary of the terms to be contained in the Letter of Credit, and therefore does not contain the essential terms of the agreement expressed with "clearness and certainty." A court interpreting this contract would not know what terms the parties had agreed to due to the tentative and indefinite nature of this letter. Furthermore, the dates are inconsistent and the style of financing term was agreed to orally.
 
 
 30
 The Partnership next contends that several acts of partial performance take the Letter of Credit out of the Statute of Frauds. The defendants counter that the Partnership did not make this argument to the trial court. No document filed with the district court contains the "part performance" argument, including the Plaintiff's Memorandum in Opposition to Defendants' Motion for Judgment as a Matter of Law filed with the district court on June 28, 1993. This Memorandum should have contained the Partnership's "part performance" argument in response to the defendant's contention in its motion for judgment as a matter of law that the contract did not conform with Ohio's Statute of Frauds. Having failed to raise this argument to the district court, the argument is waived on appeal. Federal Deposit Ins. Corp. v. Binion, 953 F.2d 1013, 1018 (6th Cir.1991) (defendant failed to respond to plaintiff's motion for attorney's fees); First National Monetary Corp. v. Weinberger, 819 F.2d 1334, 1339 (6th Cir.1987) (stating that "[i]n the interests of judicial economy, an appellate court will generally not review issues that were not addressed to the forum below").
 
 
 31
 The Partnership's next claim on appeal is that the district court had a duty to consider and determine whether the Partnership could prevail on its promissory estoppel claim (Count IV). The judge had instructed the jury that if it found for the defendants on the Partnership's contract claim, then it should deny the Partnership's promissory estoppel claim on its own initiative. In its post-trial motion, the Partnership did not ask the district court for judgment as a matter of law on the promissory estoppel claim. The Partnership now claims that the district court should have considered whether the Partnership should prevail on its promissory estoppel claim. Again, the Partnership has waived this issue on appeal by not raising it to the district court in its Rule 50(b) motion. Furthermore, the Partnership did not object to the jury instruction on Count IV, despite having the opportunity to do so in chambers and in open court, and cannot now assign error to the court's instruction on the promissory estoppel claim. Fed.R.Civ.P. 51.
 
 
 32
 The Partnership's final claim on appeal is that the district court erred by "dismissing" its fifth claim under 12 U.S.C. § 1972(1)(C) at trial. In its amended complaint, the Partnership asserted that the defendants violated Section 1972 in four ways: 1) by conditioning "a loan ... and loan commitment" on Shanker's placing real property in a partnership and requiring another company, Divco, Inc., to become a partner, 2) by requiring the Partnership to use Huntington Company exclusively in the placement of the bonds and for financial advisory services, 3) by forcing Shanker to have the Partnership allow a lien on Partnership real property as collateral, and 4) by requiring the partners' spouses to sign any loan.
 
 
 33
 At trial, the Partnership apparently decided to raise a fifth theory as to how the defendants violated Section 1972, as permitted by Federal Rule of Civil Procedure 15(b). The Partnership attempted to elicit testimony from their banking expert, Carlton Hill, regarding whether the "entireties clause"[5] in the December 30 letter of commitment was an "unusual banking practice."[6] The Joint Appendix does not contain the transcript of the court's ruling "dismissing" this claim. See J.A. 1912-28 (partial transcript of Hill's testimony). The Partnership asserts that the district court excluded this evidence on the ground that, as a matter of law, an entireties clause in a contract it not an "unusual banking practice."
 
 
 34
 Thus, the Partnership is actually arguing that the district court abused its discretion in excluding this evidence. Mayhew v. Bell Steamship Co., 917 F.2d 961, 962 (6th Cir.1990) (stating that a district court's decision to exclude expert testimony is reviewed for abuse of discretion). The Partnership's argument that the inclusion of an entireties clause in the Letter of Credit is an "unusual banking practice" resulting in a benefit to the Bank of about $6 million is premised on their belief that an oral contract already existed between the Bank and the Partnership to issue the Letter of Credit. The Partnership argues that, because the oral contract existed as of early November 1988, the Bank's attempt to get the Partnership to sign a written contract with this entireties clause amounted to a release of the Partnership's rights to sue on the oral contract. Because we agree with the district court that an enforceable parol contract did not exist, the basis for the Partnership's assignment of error no longer exists and this issue is now moot.
 
 
 35
 Based on the foregoing, this Court concludes that the district court did not err in granting judgment as a matter of law to the defendants and we therefore AFFIRM the judgment.
 
 
 
 [1]
 The defendants are three wholly-owned subsidiaries of Huntington Bancshares (not a party): The Huntington National Bank (a full service bank), The Huntington Mortgage Company (a mortgage agent for commercial construction projects), and The Huntington Company (an investment banking company)
 
 
 [2]
 The defendants appealed because the district court chose not to rule on the defendants' request for a new trial, pursuant to Fed.R.Civ.P. 50(c). The court concluded that the request was moot. The defendants now "conditionally cross-appeal" the district court's decision not to rule on their new trial motion in the event this Court reverses
 
 
 [3]
 In this case, our jurisdiction is based on the federal claim and our jurisdiction over the state law claims is supplemental. 28 U.S.C. § 1367(a) (Supp. II 1990). Therefore, on review we apply the federal law standard for deciding whether to grant a Fed.R.Civ.P. 50(b) motion. If our jurisdiction were predicated on diversity of citizenship, we would look to Ohio law for our standard of review. See Preferred RX, Inc. v. American Prescription Plan, Inc., 46 F.3d 535, 543 (6th Cir.1995) (applying New York's standard for reviewing judgment as a matter of law in a diversity case); Construction Interior Sys., Inc. v. Marriott Family Restaurants, Inc., 984 F.2d 749, 753 (6th Cir.), cert. denied, 114 S.Ct. 194 (1993) (stating that this Court applies the state courts' standard in reviewing a motion for judgment as a matter of law in a diversity case); Potti v. Duramed Pharmaceuticals, Inc., 938 F.2d 641, 645 (6th Cir.1991) (applying Ohio's standard for "judgment as a matter of law")
 
 
 [4]
 One style of financing considered but rejected by the parties was known as a "Terminator" type. A "Terminator" Letter of Credit would terminate upon the occurrence of certain conditions. The other type of financing contemplated by the parties was known as a multi-option rate adjustable note (MORAN). Appellants' Brief at 6. The Partnership asserts that the Letter of Credit was not to be a "Terminator" type, as described in Exhibit B to the November 8 letter, but a MORAN type. Therefore, we need not consider whether the conditions listed in Exhibit B might have caused the Letter of Credit to be terminated within one year
 
 
 [5]
 The entireties clause provided:
 
 
 [28]
 This Commitment Letter constitutes the entire understanding and agreement of the parties with respect to the subject matter hereof, superseding any and all negotiations and discussions between the parties. No other documents, instruments or similar or dissimilar written on [sic] verbal matters preceding the date hereof shall or may be used to vary or alter the provisions hereof
 
 
 [6]
 To make out a prima facie case of an act violating Section 1972(1)(C), a plaintiff must prove:
 1) an anticompetitive tying arrangement;
 2) that the banking practice at issue was unusual in the banking industry;
 3) and the practice must benefit the bank.
 Sanders v. First National Bank & Trust, Co., 936 F.2d 273, 278 (6th Cir.1991) (citation omitted).